149 P.3d 636 (2006)
STATE of Washington, Petitioner,
v.
Darrell Gregory JONES, Respondent.
State of Washington, Petitioner,
v.
Reginald Thomas, Respondent.
No. 76900-1.
Supreme Court of Washington, En Banc.
Argued February 7, 2006.
Decided December 28, 2006.
Brian Martin McDonald, King County Prosecutor's Office, Seattle, WA, for Petitioner.
Jason Brett Saunders, Maureen Marie Cyr, Washington Appellate Project, Seattle, WA, for Respondent.
Kevin Michael Korsmo, Attorney at Law, Spokane, WA, Amicus Curiae on behalf of Washington Association of Prosecuting Attorney.
ALEXANDER, C.J.
¶ 1 A jury found Darrell Jones guilty of possession of cocaine. At a separate trial, another jury found Reginald Thomas guilty of assault in the second degree. In each case, the sentencing court determined that the defendant before it was under community placement at the time of the offense for which he was being sentenced. Pursuant to former RCW 9.94A.525(17) (2002),[1] the respective *637 sentencing courts added one point to the defendant's offender score. Each defendant appealed to Division One of the Court of Appeals, and the appeals were consolidated. That court reversed the trial courts, holding that under Blakely v. Washington[2] and Apprendi v. New Jersey,[3] the jury, rather than the sentencing judge, must find that the defendant was on community placement before the sentencing judge may add a point to the offender score. We granted review and conclude that because community custody is directly related to and follows from the fact of a prior conviction and that the attendant factual determinations involve nothing more than a review of the nature of the defendant's criminal history and the defendant's offender characteristics, such a determination is properly made by the sentencing judge. Therefore, we reverse the Court of Appeals and uphold the sentences imposed on Jones and Thomas.

I
STATE v. JONES
¶ 2 Darrell Jones was charged with one count of unlawful possession of cocaine in violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. Following a jury trial, Jones was convicted. At his sentencing hearing, the trial court calculated Jones's offender score as 7 based upon his four prior adult felony convictions, four prior juvenile felony convictions, and because Jones was on community placement at the time he committed the present offense. Jones's Verbatim Report of Proceedings at 3 (Oct. 10, 2003). Jones disputed that he was on community placement, notwithstanding his admission that he reported to his community corrections officer (CCO) shortly before the current offense occurred. The sentencing judge concluded by a preponderance of the evidence that Jones was on community placement at the time he committed the crime of possession of cocaine.
¶ 3 Jones's standard range sentence, based on an offender score of 7, was 22 to 29 months in custody. Absent the community placement determination, Jones's standard range sentence would have been 17 to 22 months. The sentencing court ultimately imposed a drug offender sentencing alternative of 12.75 months of incarceration and 12.75 months of community custody.
STATE v. THOMAS
¶ 4 Reginald Thomas was found guilty by a jury of assault in the second degree. At sentencing, the trial court judge calculated Thomas's offender score as 8 based upon his seven previous felony convictions and because he was on community placement at the time of the current assault offense. Thomas's Verbatim Report of Proceedings at 2 (Feb. 13, 2004). Thomas did not object to the sentencing court's calculation of his offender score.[4]
¶ 5 Based upon the offender score of 8, Thomas's standard range sentence was 53 to 70 months. Without the community placement determination, his standard range sentence would have been 43 to 57 months. The sentencing court imposed a sentence of 60 months of incarceration and 18 to 36 months *638 of community custody. Clerk's Papers at 65, 67-68.

II
¶ 6 Jones and Thomas each appealed his sentence to the Court of Appeals, Division One, and their appeals were consolidated. They argued there that the respective sentencing judges violated their Sixth Amendment right to a jury trial when the judges, rather than a jury, determined that they were on community placement at the time of the present crime and used that determination to increase their standard range sentence. The Court of Appeals reversed, concluding that a defendant's status on community placement at the time of the current offense is a fact that must, under decisions of the United States Supreme Court in Apprendi and Blakely, be found by a jury beyond a reasonable doubt. In reaching its decision, the court read the prior conviction exception narrowly and rejected the State's argument that the question of whether one convicted of a crime is on community placement at the time of the current offense is a determination that falls within the prior conviction exception set forth in Apprendi and Almendarez-Torres v. United States.[5]State v. Jones, 126 Wash.App. 136, 107 P.3d 755 (2005).
¶ 7 The State petitioned our court for review, and we granted its petition. State v. Jones, 155 Wash.2d 1017, 124 P.3d 659 (2005). We also granted Jones's and Thomas's cross petition for review to address their contention that double jeopardy principles prevented the State from proving their community placement status to a jury on remand should we find constitutional error.[6] We did, however, deny Jones's request that we review the trial court's denial of his motion to suppress.

III
¶ 8 Under this State's determinant sentencing scheme, once a defendant has been convicted of a felony, the sentencing judge determines the defendant's standard range sentence based on the seriousness level of the current offense and the defendant's offender score. RCW 9.94A.530(1), .510. The defendant's offender score is determined by his or her other convictions, with the scoring of those prior convictions dependent upon the nature of the current offense. RCW 9.94A.525. One criterion used by a sentencing court to calculate the offender score is found in former RCW 9.94A.525(17). It provides that one point shall be added to the defendant's offender score "[i]f the present conviction is for an offense committed while the offender was under community placement." The term "community placement" is defined as the "period during which the offender is subject to the conditions of community custody and/or postrelease supervision." RCW 9.94A.030(7).
¶ 9 The primary question presented to us is whether a defendant has a right under the United States Constitution to have the jury that determined his guilt, rather than the sentencing judge, decide whether he was on community placement at the time he committed his current crime. This is an issue of first impression in Washington. Like all constitutional challenges, we review it de novo. State v. Cubias, 155 Wash.2d 549, 552, 120 P.3d 929 (2005) (citing State v. Bradshaw, 152 Wash.2d 528, 531, 98 P.3d 1190 (2004)).
¶ 10 Jones and Thomas rely on the decisions of the United States Supreme Court in Apprendi and Blakely as support for the contention that it is the jury, rather than the sentencing judge, that must examine the documents outlining their criminal history to determine whether they were on community placement for a prior offense at the time they committed the current offenses. They contend additionally that this determination, though "related" to a prior conviction, does not fall within the Almendarez-Torres prior conviction exception to the jury trial requirement.
*639 ¶ 11 The Court of Appeals agreed with Jones and Thomas that under the Sixth Amendment to the United States Constitution the jury is to make the community placement determination. Jones, 126 Wash.App. at 144, 107 P.3d 755. In reaching this conclusion, the Court of Appeals recognized that both Blakely (crime committed with deliberate cruelty) and Apprendi (crime committed with a racial hatred motivation) involved statutes that authorized the trial judge to increase punishment on the basis of a factual circumstance related to the current offense (as opposed to imposing increased punishment based upon facts related to the defendant's recidivism, as is the case here). The court further recognized that the United States Supreme Court had been careful to preserve the prior conviction exception it articulated in Almendarez-Torres. Despite these acknowledgments, the Court of Appeals held that the prior conviction exception is limited to exempting from the reach of Apprendi and Blakely only the basic fact of a prior conviction and does not extend to cover the review and determination of the defendant's community custody status. It concluded also that the question of whether the defendant is under community supervision at the time of the current offense is excluded from the prior conviction exception because that determination cannot be determined from the fact of a prior conviction as "[t]oo many variables are involved." Id. at 143, 107 P.3d 755.
¶ 12 The State challenges what it claims is the Court of Appeals' narrow reading of Almendarez-Torres, asserting that, as demonstrated by the decisions in Apprendi, Blakely, and, most recently, United States v. Booker, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the United States Supreme Court continues to recognize the prior conviction exception and that a full consideration of the history and reasoning behind the exception reveals that it is not limited to the mere fact of the prior conviction. Suppl. Br. of Pet'r at 7. The State argues that the prior conviction exception broadly encompasses determinations flowing from the fact of a prior conviction, such as whether the defendant was still under supervision at the time of his current crime. Id. at 5. Furthermore, the State asserts that a defendant's status on community placement is a recidivist fact question and, as such, is the type of inquiry that judges traditionally, and properly, perform as a part of their sentencing role. Finally, the State contends that because a defendant's custody status has been established by procedures that satisfy and safeguard constitutional jury trial and reasonable doubt guaranties, Apprendi specifically allows the court, rather than the jury, to undertake and make the community placement determination as a matter of law. Id. at 13-14.
¶ 13 As the parties' arguments suggest, resolution of the disputed issue in this case involves two related inquires: (1) the breadth of the Almendarez-Torres prior conviction exception and (2) the safeguards associated with the inquiry that is to be made by the sentencing court under former RCW 9.94A.525(17). While we fully address each of these inquiries, for reasons stated below, we conclude that the United States Constitution does not require a jury to examine the record associated with a prior criminal conviction to determine the defendant's community placement status. In our view, the nature of the inquiry that must be conducted for the community placement determination an examination strictly limited to a review and interpretation of documents (such as the prior judgment and sentence) that are part of the judicial record created by a prior convictionis an issue of law that is properly entrusted to the sentencing court and falls within the prior conviction exception.

A. The Scope of the Prior Conviction Exception

¶ 14 The prior conviction exception arises from the United States Supreme Court's decision in Almendarez-Torres, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350.[7] There, the *640 Court rejected the defendant's claim that his prior felony convictions were elements of his current crime which had to be pleaded in the indictment and proved to a jury beyond a reasonable doubt. In reaching its conclusion that a prior felony conviction is a sentencing factor appropriate for the court's determination and not a fact issue for the jury to determine, the Supreme Court recognized that a defendant's recidivism "is a traditional, if not the most traditional, basis for a sentencing court[]" to increase the reoffender's current sentence. Id. at 243, 118 S.Ct. 1219. It indicated that were it to hold that the United States Constitution requires the defendant's recidivism be deemed an element of the petitioner's offense to be proved to the jury beyond a reasonable doubt, such a holding would mark an abrupt departure from a long-standing tradition of treating recidivism as "`go[ing] to the punishment only.'" Id. at 244, 118 S.Ct. 1219 (alteration in original) (quoting Graham v. West Virginia, 224 U.S. 616, 629, 32 S.Ct. 583, 56 L.Ed. 917 (1912)).
¶ 15 Some two years after its decision Almendarez-Torres, the United States Supreme Court decided Apprendi, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. The Court revisited the role of recidivism in sentencing. It held unconstitutional a New Jersey "hate crime" statute that allowed the trial court to decide the truth of a racial bias motivation allegation under a preponderance of the evidence standard. The Court determined that the defendant was entitled to a jury trial, with a beyond-a-reasonable-doubt standard of proof, on the question of whether the defendant was motivated by racial bias to commit the crime. In reaching its decision, however, the Court reaffirmed the Almendarez-Torres exception, noting that a prior conviction need not be determined by a jury because of the procedural safeguards attached to any fact of prior conviction and due to the traditional use by states of recidivism facts to provide for sentence enhancements. Although the Court of Appeals acknowledged here that it had no reason to question the prior conviction exception's continued viability, it held that the community placement question does not fall within the exception because it should be read narrowly to include only the mere fact of a prior conviction and should not include facts that flow directly from the fact of a prior conviction. Jones, 126 Wash.App. at 144, 107 P.3d 755. We disagree.
¶ 16 In our judgment, the prior conviction exception encompasses a determination of the defendant's probation status because probation is a direct derivative of the defendant's prior criminal conviction or convictions and the determination involves nothing more than a review of the defendant's status as a repeat offender. In this regard, the community placement conclusion does not implicate the core concern of Apprendi and Blakely that is the determination does not involve in any way a finding relating to the present offense conduct for which the State is seeking to impose criminal punishment and/or elements of the charged crime or crimes. To give effect to the prior conviction exception, Washington's sentencing courts must be allowed as a matter of law to determine not only the fact of a prior conviction but also those facts "intimately related to [the] prior conviction" such as the defendant's community custody status. United States v. Moore, 401 F.3d 1220, 1225 (10th Cir.2005); accord *641 United States v. Mattix, 404 F.3d 1037, 1038 (8th Cir.2005) (per curium) (pointing to Booker and Shepard v. United States, 544 U.S. 13, 27, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)) (Eighth Circuit notes that courts have long considered prior criminal history as a sentencing factor for a court to decide rather than a fact issue for the jury and that the Supreme Court has not changed that rule).
¶ 17 In support of our holding, we take note of and rely heavily upon the following considerations. First, former RCW 9.94A.525(17) is not an exceptional sentence statute and allows for a point to be added to the offender score only when the defendant is a recidivist. Thus, the statutory provision not only does not implicate exceptional sentences, it also falls squarely within the parameters of the prior conviction exception carved out by the United States Supreme Court. Accord Blakely, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (judicial fact finding permitted when establishing the standard range sentence).
¶ 18 Second, our holding is consistent with Washington law. Since the Sentencing Reform Act of 1981, chapter 9.94A RCW, was enacted, sentencing courts have permissibly engaged in judicial fact finding about a defendant's recidivism when arriving at a legal conclusion about the appropriate punishment to be imposed for the current crime. Accordingly, while the United States Supreme Court recognized in Apprendi that tension existed between the rationale of its underlying decision requiring a jury to find any fact that increases the maximum penalty for a crime and its rule permitting a court, rather than a jury, to determine sentence enhancements that are based upon a defendant's prior convictions, the Court declined to overrule its prior case law pertaining to recidivist sentencing provisions. Apprendi, 530 U.S. at 489-90, 120 S.Ct. 2348. We likewise decline to disturb the traditional role Washington's judges play when considering the import of a defendant's past unlawful conduct upon his current sentence. On this point, it is notable that another division of the Court of Appeals, Division Three, has recognized more recently that a sentencing court's determination of an offender's community placement status does not run afoul of Blakely because that determination falls within prior conviction exception. See State v. Brown, 128 Wash.App. 307, 116 P.3d 400 (2005) (Blakely does not compel a jury determination of the fact that the defendant was on probation at the time of his current offense); State v. Hunt, 128 Wash.App. 535, 116 P.3d 450 (2005) (the exception for prior convictions encompasses whether an accused is on community custody at the time of his current offense). We agree with that court's reasoning.
¶ 19 Finally, our holding is also in line with numerous out-of-state and federal court decisions that have interpreted the Almendarez-Torres exception more broadly than did the Court of Appeals here. See United States v. Corchado, 427 F.3d 815, 820 (10th Cir.2005) (holding that the enhancement of a defendant's criminal history category based upon his probation status does not violate the Sixth Amendment), cert. denied, ___ U.S. ___, 126 S.Ct. 1811, 164 L.Ed.2d 546 (2006); State v. Stewart, 368 Md. 26, 791 A.2d 143 (2002) (the Almendarez-Torres exception covers questions related to recidivism, not merely the fact of a prior conviction); People v. Thomas, 91 Cal.App.4th 212, 110 Cal.Rptr.2d 571, 579 (2001) (concluding that in terms of recidivism findings that enhance a sentence and that are unrelated to the elements of a crime, Almendarez-Torres is the controlling authority and that the language in Apprendi relating to the "`fact of a prior conviction'" should be read broadly to include all determinations involving recidivism); State v. Dixon, 346 N.J.Super. 126, 787 A.2d 211, 221 (2001) ("`we read Apprendi as leaving to the judge, consistent with due process, the task of finding not only the mere fact of previous convictions but other related issues as well'") (quoting United States v. Santiago, 268 F.3d 151, 156 (2d Cir.2001)).
¶ 20 In sum, contrary to Division One of the Court of Appeals' and Jones's and Thomas's narrow reading of the prior conviction exception, we read the Almendarez-Torres prior conviction exception to encompass facts that follow necessarily or as a matter of law from the fact of a prior conviction, such as the defendant's community placement status.

*642 B. The Community Placement Determination

¶ 21 The second reason identified by the United States Supreme Court in Apprendi for excluding a prior conviction related determination from a jury's consideration is that prior convictions have been established by procedures that satisfy constitutional due process and Sixth Amendment guaranties. Apprendi, 530 U.S. at 488, 120 S.Ct. 2348; accord Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In this case, Jones and Thomas do not challenge the fact that their status on community placement necessarily followed from a determination that they had a prior conviction. They also do not argue that the prior convictions from which the sentencing courts in these cases based their community placement determinations lacked constitutionally required procedural safeguards.
¶ 22 Rather, Jones, Thomas, and the dissent argue more generally that the community placement determination under Washington law involves too many "variables" to be equivalent to finding the mere fact of a prior conviction. Resp'ts' Answer to Pet. for Review at 9; see dissent at 645. In making this argument, they assert that because a sentencing judge may have to consider factors beyond the existence of the prior conviction and that because such considerations could be complex or even challenged,[8] "[t]he procedural safeguards necessary to the prior conviction exception are not present" in the community placement determination. Resp'ts' Answer to Pet. for Review at 10. Again, we disagree.
¶ 23 Similar to the determination of a fact or character of prior conviction, a sentencing judge can readily determine a defendant's probation status on the date he committed the present crime merely by reviewing court records relating to that prior conviction. Washington law specifies that in making the community placement determination, the sentencing court is limited in the type of evidence that it may review. It may rely on the judgment and sentence from the prior crime, the criminal history submitted, and those documents flowing from the prior conviction and sentence, such as the presentence report and department of corrections' records. See, e.g., RCW 9.94A.480, .500.
¶ 24 The sentencing court's review of the records submitted does not contemplate that the court will make an independent determination regarding the defendant's culpability with respect to the current offense. Instead, as was the nature of the sentencing court's review in this case, the community placement review simply consists of an examination of criminal history and a determination by the sentencing court of whether that record demonstrates that the defendant before him or her was or was not on community placement at the time he or she committed the current crime for which he or she is being sentenced. Like the inquiry associated with the fact of a prior conviction, this type of inquiry (1) is inherently reliable, (2) arises out of a prior conviction based upon a finding of guilt by a trier of fact or the defendant's guilty plea, and (3) is the type of inquiry traditionally performed by judges as part of the sentencing function. Accord United States v. Carrillo-Beltran, 424 F.3d 845, 848 (8th Cir. 2005) ("A court must be allowed to determine not only the `fact of a prior conviction' but also those facts so `intimately related' to the prior conviction to [give meaning to] the Apprendi exception."), cert. denied, ___ U.S. ___, 126 S.Ct. 1384, 164 L.Ed.2d 89 (2006); State v. Allen, 706 N.W.2d 40, 48 (Minn.2005) (given that the fact that defendant is on probation is analogous to the fact of a prior conviction and can be determined by reviewing *643 court records relating to the prior conviction, "constitutional considerations do not require [probation status] to be determined by a jury"), cert. denied, ___ U.S. ___, 126 S.Ct. 1884, 164 L.Ed.2d 583 (2006).
¶ 25 Despite acknowledging that a defendant's community placement status is a determination about a prior conviction, Jones and Thomas argue, based on the United States Supreme Court's decision in Shepard, 544 U.S. at 25, 125 S.Ct. 1254, that the community placement determination is not the actual fact of a prior conviction and, consequently, is too far removed to have the conclusive significance of a conviction document. See Suppl. Br. of Resp'ts at 10. We are not persuaded that Shepard controls the precise issue before us. We say that because that case involved whether, under the federal Armed Career Criminal Act, 18 U.S.C. § 924(e), a later court could look to police reports or complaint applications in determining whether a guilty plea in an earlier criminal proceeding formed the basis for a conviction of "generic" burglary, thereby qualifying the defendant for a minimum 15-year sentence. Furthermore, the case was ultimately resolved as a matter of federal statutory interpretation. Shepard, 544 U.S. at 16, 125 S.Ct. 1254. However, to the extent that case applies, it favors our holding.
¶ 26 Not only did the United States Supreme Court in Shepard once again acknowledge the "prior conviction" exception, the Court also held that later sentencing courts may consider documents beyond the prior judgment and sentence to support prior-offense-based sentencing determinations. Specifically, the Court held that the sentencing court may make the relevant prior conviction determination by looking to the jury instructions, the charging documents, the plea agreement, transcript of plea colloquy, any explicit factual finding by the trial judge to which the defendant assented, and any "comparable judicial record." Id. at 26, 125 S.Ct. 1254. It did say that police reports and complaint applications run afoul of Apprendi because disputed facts in those types of reports are "too much like the findings subject to . . . Apprendi, to say that Almendarez-Torres clearly authorizes a judge to resolve the dispute." Id. at 25, 125 S.Ct. 1254.
¶ 27 Police reports and complaint applications are not at issue here. The record shows the respective sentencing courts reviewed the defendants' criminal history and community placement status, as contained in the presentence report, when determining whether each was under community placement at the time he committed the present offenses. This is the type of judicial inquiry that guarantees the conclusive significance that is the focus of Apprendi and that also contains the procedural safeguards established by the fact of the prior conviction.
¶ 28 In sum, because the community placement sentence determination is a determination about a defendant's status as recidivist, does not require the independent judgment of a fact finder about facts related to a defendant's commission of the current offense, and can be readily determined by a limited examination of the record flowing from the prior conviction, we conclude that a court, rather than a jury, may, pursuant to Almendarez-Torres, make, constitutionally, the former RCW 9.94A.525(17) community placement determination.

IV
¶ 29 In light of our determination that Jones and Thomas were not entitled to have a jury, rather than the sentencing court, determine whether they were under community placement at the time they committed the present crimes for which they were convicted, we do not reach the State's alternative argument that any error committed by the sentencing court in this regard was harmless. In addition, our holding has rendered moot Jones's and Thomas's challenge that double jeopardy would prevent the State from proving their community placement status to a jury on remand.

V
¶ 30 Unlike the criminal defendants in Blakely and Apprendi, neither Jones nor Thomas improperly received an exceptional sentence based on an aggravating fact relating to their current offense. Rather, under *644 Washington law, a condition of a prior conviction and sentence served to increase their standard range sentence in the same way as the fact of their prior conviction did. The community placement status determination under former RCW 9.94A.525(17) relates only to the defendant's status as a recidivist and is readily established as a matter of law by a review of criminal history that incorporates constitutional safeguards. Therefore, we conclude that determination properly falls within the Almendarez-Torres prior conviction exception. Because the Court of Appeals held otherwise and thereby extended Blakely's jury trial requirement to the community placement determination, we reverse the Court of Appeals and affirm Thomas's and Jones's sentences.
WE CONCUR: TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON and BOBBE J. BRIDGE, Justices.
SANDERS, J. (dissenting).
¶ 31 The majority denies Darrell Gregory Jones's and Reginald Thomas's right to have a "jury find the existence of `any particular fact' that the law makes essential to [their] punishment," United States v. Booker, 543 U.S. 220, 232, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (internal quotation marks omitted) (quoting Blakely v. Washington, 542 U.S. 296, 301-02, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)), as the Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 244, 125 S.Ct. 738. Here the fact of a prior conviction doesn't tell us whether these defendants committed the current offense while on community placement. That sentencing factor must be proved to a jury.

I
¶ 32 The majority attempts to circumvent the Sixth Amendment by claiming a defendant's community placement status is "`intimately related'" to a prior conviction, whereas a prior conviction need not be proved to the jury. Majority at 640-41 (quoting United States v. Moore, 401 F.3d 1220, 1225 (10th Cir.2005)). However, instead of inquiring whether community placement status is intimately related to a prior conviction-which it is not-the constitution limits our inquiry to whether community placement is itself a prior conviction. If not, the fact must be proved to a jury.
¶ 33 The majority imprudently constructs its broad view of "prior conviction" by expanding on the rule announced in Almendarez-Torres v. United States[1] that a prior conviction need not be proved to a jury. Majority at 639 (stating a central issue is the "breadth of the Almendarez-Torres prior conviction exception"). Although this case is inapposite to the issue here, it is "at best an exceptional departure from historic practice," Apprendi v. New Jersey,[2] with little or no precedential worth. Id. at 488-90, 120 S.Ct. 2348 (describing Almendarez-Torres as a "narrow" or "limited" exception). The Supreme Court never overruled Almendarez-Torres because its validity was never at issue:
Even though it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence.
Apprendi, 530 U.S. at 489-90, 120 S.Ct. 2348 (emphasis added) (footnote omitted). Although the Supreme Court has expressly limited Almendarez-Torres to its "unique facts," these "unique facts" are not present *645 here.[3] Furthermore, Almendarez-Torres's continuing legitimacy is also problematic after Justice Thomas explained in Apprendi he should have voted with the dissent in Almendarez-Torres, a 5-4 decision. Apprendi, 530 U.S. at 520-21, 120 S.Ct. 2348 (Thomas, J., concurring); see also State v. Wheeler 145 Wash.2d 116, 129-31, 34 P.3d 799 (2001) (Sanders, J., dissenting) (discussing other reasons to doubt whether Almendarez-Torres is good law).
¶ 34 But even reading Almendarez-Torres as good law to exempt evidence of a prior conviction from the Sixth Amendment right to a jury trial, we must ask whether the sentencing judges here were simply relying on a prior conviction or exceeded their authority by considering other alleged facts beyond the fact of a conviction. See Blakely, 542 U.S. at 304, 124 S.Ct. 2531 ("When a judge inflicts punishment that the jury's verdict alone does not allow, . . . the judge exceeds his proper authority.").

II
¶ 35 Certainly whether a defendant is on community placement at any given point in time is not the same as the fact of a prior conviction. As the Court of Appeals demonstrated, whether a defendant is actually on community placement cannot be determined from the prior conviction itself:
More importantly, whether one convicted of an offense is on community placement or community custody at the time of the current offense cannot be determined from the fact of a prior conviction. Too many variables are involved.
For example, a defendant may receive credit for preconviction incarceration, the length of which may not be specified in the judgment and sentence. The defendant may receive additional credit for preconviction incarceration if the local detention facility awarded him good conduct time. And even if both of these determinations are in the relevant judgment and sentence, there is no possible way for the sentence to reflect whether the defendant will eventually become entitled to "[e]arned release time" under RCW 9.94A.728, which may be as much as 50 percent of the sentence imposed. Moreover, under RCW 9.94A.728(2)(d), the DOC may deny release to community custody status for some offenses even if a defendant has obtained "earned release" if the DOC does not approve of the defendant's living arrangements. Thus, the fact of the prior conviction does not establish when community placement actually begins.
When community placement ends can also vary. Under RCW 9.94A.715(1), defendants may receive community custody in terms of a range of months or up to the period of earned release . . . which ever is longer. The high and low end of the range can differ by as much as two years. Under RCW 9.94A.715(4), it is the DOC, not the sentencing court, that determines where in the range the defendant's term falls.
State v. Jones, 126 Wash.App. 136, 143-44, 107 P.3d 755 (2005) (footnotes and internal quotations omitted) (alteration in original). These numerous factors require the trial court to look beyond the prior conviction to determine the actual facts. Unlike a prior conviction, a jury has never previously determined that these defendants were on community placement at any particular point in time. Therefore, the Sixth Amendment requires a jury, not the judge, to find whether Jones and Thomas were on community placement when their offenses were committed.
¶ 36 Sixth Amendment rights are violated when we allow the "`legislature to remove from the jury the assessment of facts that *646 increase the prescribed range of penalties to which a criminal defendant is exposed.'" Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 (quoting Jones v. United States, 526 U.S. 227, 252, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (Stevens, J., concurring)).
¶ 37 Accordingly, I dissent.
WE CONCUR: BARBARA A. MADSEN, Justice.
NOTES
[1] During our consideration of this case, the legislature amended and recodified RCW 9.94A.525. See Laws of 2006, ch. 128, § 6. Among other changes made by the legislature to this section, the provision at issue here, RCW 9.94A.525(17), was renumbered and now stands as RCW 9.94A.525(18). Despite this cosmetic change, the provision at issue here remains substantively the same, and our holding in this case applies equally to the amended version of the statute.
[2] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[3] 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[4] In his written presentence report, Thomas agreed that his standard range sentence was 53 to 70 months, thereby implicitly acknowledging that his offender score was 8 and that he was, therefore, on community placement at the time he committed the assault. Clerk's Papers at 55. The State does not, however, argue that, because Thomas acknowledged his community placement status, he waived his ability to challenge the constitutionality of his sentence. Consequently, we do not address or reach that issue. Rather, as discussed in this opinion, the State argues that the community placement determination falls within the prior conviction exception and that any error is harmless. We explicitly rejected the latter argument in State v. Recuenco, 154 Wash.2d 156, 110 P.3d 188 (2005). However, more recently, the United States Supreme Court determined that Apprendi/Blakely violations are not structural errors and, thus, can be subject to harmless error analysis. Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). Given our holding in this case, we find no basis upon which to revisit or reach the harmless error issue here.
[5] 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).
[6] The Court of Appeals rejected this argument in the unpublished portion of its opinion. See Jones, No. 53322-3-I, slip op. (unpublished portion) at 13-14 (Wash.Ct.App. Feb. 28, 2005).
[7] In reaching a conclusion that differs from that which we reach today, the dissenting justices place strong emphasis on the continued "legitimacy" of the United States Supreme Court's decision in Almendarez-Torres. Dissent at 645. We acknowledge that Justice Clarence Thomas has suggested that he took the wrong position in that case and would like to address the ongoing validity of the Almendarez-Torres holding. Accord Shepard v. United States, 544 U.S. 13, 27-28, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring). Notwithstanding Justice Thomas's misgiving, we are not convinced that the Supreme Court is inclined to disavow its decision in that case given that it has been presented with several opportunities to do so, including the recent decisions in Booker and Shepard. Accord statement of Justice John Paul Stevens respecting the denial of the petitions for writ of certiorari in Banegas-Hernandez v. United States, ___ U.S. ___, 126 S.Ct. 2951, 165 L.Ed.2d 974 (2006) and Rangel-Reyes v. United States, ___ U.S. ___, 126 S.Ct. 2873, 165 L.Ed.2d 910 (2006) (There is no special justification for overruling Almendarez-Torres and countless judges in countless cases have relied on that case in making sentencing determinations.). Even if we were inclined to agree with the dissent's unstated assertion that it is only a matter of time before that case is overruled, we are certainly not free to overrule or ignore established Supreme Court precedent. See State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) ("it is [the Supreme] Court's prerogative alone to overrule one of its precedents"). Almendarez-Torres remains the law of the land, and a number of jurisdictions have construed that case to allow for the result we have reached herein.
[8] As to these points, we join the Second Circuit Court of Appeals in rejecting the argument that the prior conviction exception applies only when the prior conviction and facts related thereto may be determined with ease and/or without challenge. See Santiago, 268 F.3d at 156 ("While the Almendarez-Torres exception to the Apprendi rule . . . typically involves a relatively uncontested record, this is by no means always the case. The determination of `the fact of a prior conviction' implicitly entails many subsidiary findings, not the least of which is that the defendant [presently] being sentenced is the same defendant who . . . was convicted of those prior offenses, a fact that could be quite controversial indeed." (emphasis added; emphasis omitted)). In addition, we note that the record of a defendant's conviction will generally not contain conflicting evidence.
[1] 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).
[2] 530 U.S. 466, 487, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[3] Almendarez-Torres pleaded guilty to being in the United States after being deported under 8 U.S.C. § 1326(a). Almendarez-Torres, 523 U.S. at 227, 118 S.Ct. 1219. This crime carried a maximum penalty of two years, but the government sought punishment under § 1326(b), which allowed a sentence up to 20 years if the defendant had been deported after an aggravated felony conviction. Id. In Apprendi, the Court noted Almendarez-Torres "admitted the three earlier convictions for aggravated feloniesall of which had been entered pursuant to proceedings with substantial procedural safeguards of their own no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court." Apprendi, 530 U.S. at 488, 120 S.Ct. 2348.