IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59608-3-II |
| Respondent, | |
| v. | |
| HENRY WILLIAM HAUSER, JR., | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Henry Hauser, Jr. appeals his convictions of first degree kidnapping, indecent liberties with forcible compulsion, and second degree identity theft. He also appeals his sentence to life without release/parole (LWOP), which the trial court imposed pursuant to the Persistent Offender Accountability Act (POAA), RCW 9.94A.570. Hauser's convictions arose from allegations that he held the victim in chains in a garage for several days and sexually assaulted her multiple times while she was detained.

When Hauser was arrested, officers identified him using a bulletin that contained photographs of his tattoos. The trial court issued an order prohibiting the admission of information regarding the source of the photographs in the bulletin. At trial, an officer mentioned that photographs used in bulletins like the one used to identify Hauser can come from DOL photographs or old booking photographs. Another officer mentioned that the police took a

photograph of Hauser's tattoos. After trial, Hauser moved for a new trial on the basis that the State intentionally violated the court's order, which prejudiced him because it enabled the jury to infer that he had engaged in criminal activity in the past.

Two of Hauser's convictions in this case qualified as most serious offenses under the POAA. At sentencing, the trial court determined without a jury finding that Hauser previously had committed at least two other most serious offenses on separate occasions. Therefore, it sentenced him to LWOP, as required by RCW 9.94A.570.

We hold that (1) sufficient evidence supported the jury's conclusion that Hauser kidnapped AH with the intent to facilitate rape; (2) we decline to consider Hauser's argument that the officers' testimony about Hauser's tattoos constituted a serious irregularity under CrR 7.5(a)(5) because he did not move for a new trial on that basis in the trial court; (3) Hauser's argument that the POAA is unconstitutional because it is administered in a racially disproportionate manner fails as we held in *State v. Nelson*, 31 Wn. App. 2d 504, 550 P.3d 529, *review denied*, 3 Wn.3d 1030 (2024); and (4) *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024) does not prohibit a trial court rather than a jury from finding that the POAA applies.

Accordingly, we affirm Hauser's convictions and sentence.

FACTS

*Background*

A couple was driving in Tacoma when they saw AH wandering on a street. AH had a large chain in her hands. The other end of the chain was attached to her ankle. She had no shoes on and was wet. The couple pulled over and called 911. AH told them that she had been held for a few days and had been raped. Police and firefighters came to the scene. They removed the

chain from AH's ankle and took her to the hospital for treatment. On the way to the hospital, AH showed law enforcement officers the house where she said she was held.

Law enforcement officers responded to the house. They learned that Hauser's father owned the house and that Hauser was the person that used the garage. Hauser was arrested five days later. When Hauser was arrested, he initially gave a false name. But officers were able to identify him using photographs of his tattoos.

The State charged Hauser with two counts of first degree rape, attempted first degree rape, third degree rape, first degree kidnapping with the intent to facilitate rape, indecent liberties with forceable compulsion, second degree identity theft, and making a false or misleading statement to a public servant.[1]

*Trial*

At trial, AH testified that she met Hauser while she was at a store in Tacoma. She spoke with him because she wanted to find a place to get out of the rain and take drugs. At the time of the incident, she was struggling with substance abuse and mental health disorders and had nowhere to live. She decided to go home with Hauser, but it was clear that there would be nothing of a sexual nature.

AH said she and Hauser went to Hauser's house. There, they hung out in a room at the back of the house and took methamphetamine. After about 24 hours of hanging out together, AH said she was going to leave. When AH said this, they were in a garage detached from the main house that had a work bench and a pickup truck in it.

AH said that when she told Hauser she was going to leave, he started to cry. When AH saw that Hauser was crying, she said something that offended him. She said that this comment

---

[1] Hauser pled guilty to making a false or misleading statement to a public servant.

led Hauser to attack her. Although AH stated that she did not have a clear memory of the incident, she could recall that she tried to fight back and that he assaulted her. AH said that during this altercation, Hauser grabbed a rope and tied her to a work bench. AH stated that Hauser then tore off her clothes and sexually assaulted her. Again, AH said that she could not remember exactly what happened, but she stated that Hauser penetrated her vagina with his fingers, and his hands and mouth touched her breasts.

AH testified that Hauser then chained her to the bed of the truck in the garage. She said that after she was moved to the truck, another incident of a sexual nature involving her breasts and vagina occurred. AH stated that on another occasion, Hauser tried to spread her legs apart and his mouth contacted her vagina, but she could not recall if his mouth went inside of it. AH said that at points during her detention she was kept naked from the waist down. And she said that she had to use the restroom in buckets during this time.

AH described that she was able to escape from the garage when she managed to obtain a key to the padlocks securing her to the truck.

Firefighter Allyson Hinzman testified that she responded to the scene where the couple found AH. Hinzman testified that AH told her that she had been captured and repeatedly sexually assaulted. She said that she helped remove the chain from AH's ankle, which was secured to her with a bolt and epoxy.

Crime Scene Technician Christine Doan testified regarding her investigation. She discussed that she identified and photographed evidence in Hauser's garage. She described photographs she took of chains and ropes attached to the front and back of the pickup truck. She described the photographs of a box of condoms discovered under the truck where AH said she

was held. Doan said that she went to the hospital and photographed apparent injuries on AH's ankles, wrists, inner thighs, and buttocks.

Nurse Alison Komomua testified that she conducted a sexual assault nurse examination on AH and took swabs from AH's body for testing. She said that AH told her that a man abducted her, assaulted her with his hands, and penetrated her vagina with his mouth and hands. Komomua said that she did not note any signs of physical injury or trauma on AH. And a forensic scientist testified that he tested the swabs from the sexual assault examination and discovered no evidence of male DNA on AH's body.

The State sought to introduce photographs of the tattoos used to identify Hauser. Hauser objected, arguing that evidence about the source of the photographs of his tattoos could lead to the jury to infer that he had a criminal history. The trial court permitted the State to introduce evidence of Hauser's tattoos. But the court ordered that where the information came from could not be mentioned.

Police officer Gregory Cenicola testified regarding Hauser's arrest. He said investigators put out a bulletin for Hauser that contained photographs of his face and tattoos. Officers received a tip that Hauser was at a local store, and they found him there. Hauser gave a different name when officers first confronted him. But the officers were able to identify him using photographs of his forearm tattoos in the bulletin.

Cenicola stated that the photo he had did not exactly match Hauser. But that was a common occurrence because sometimes the bulletins were "taken from [Department of Licensing] photos *or old booking photos*." Rep. of Proc. (RP) at 1191 (emphasis added). Hauser objected, and the trial court sustained the objection and instructed the jury that the answer was stricken.

5

Outside the jury's presence, the trial court and parties discussed Cenicola's reference to "old booking photos." Hauser said that he should move for a mistrial, but he did not. He sought sanctions against the State on the grounds that the State intentionally elicited information about the source of the photographs. The State detailed the steps it took to prevent the jury from hearing this information. The trial court said that it did not "believe that [the prosecutor] did anything other than what he could do, in terms of warning the officer." RP at 1197. It concluded that it was "not finding that there was anything intentional or malicious, certainly not by the State. I'm not sure what the officer was thinking." RP at 1198.

Detective Jennifer Quilio testified that she obtained identifying information related to Hauser. The prosecutor showed Qulio photographs of Hauser's tattoos and then the following exchange occurred:

> Q. And do you believe that those are photographs of tattoos associated with Henry William Hauser, Jr.?
>
> A. Yes. The photographs are of two tattoos that I do recognize as being on Mr. Hauser's body. *These photographs were taken by the police.*

RP at 1227 (emphasis added).

After Quilio finished testifying, the following exchange occurred outside of the jury's presence:

> MR. JOHNSON: Yes, Your Honor. They did it again. I didn't make an objection because I didn't want to ring the bell in front of the jury again, and I'm placed in the horrible position of whether I ask for a limiting instruction or not, or if I should move for a mistrial. But --
>
> THE COURT: Just so we're clear, your objection right now is timely taken.
> . . . .
>
> MR. JOHNSON: . . . I'm asking for -- I'm asking for contempt now. I asked earlier for some sort of sanction being imposed. Your Honor was contemplating it. There were all sorts of promises this wouldn't happen again. It happened again. I'm asking -- I'm moving for a contempt.

RP at 1230-31.

The State responded by again detailing the steps it took to avoid violating the court order. The trial court took the contempt motion under advisement. Hauser did not request a limiting instruction, and the court did not strike or instruct the jury on Quilio's testimony. Hauser said he was not moving for a mistrial at that time. And he did not subsequently ask for a mistrial.

The jury found Hauser guilty of kidnapping in the first degree, indecent liberties, and second degree identity theft. It was unable to reach a verdict on the rape or attempted rape charges.

*Motion for a New Trial*

After trial, Hauser filed a motion for a new trial under CrR 7.5(a)(1) and (2). He argued that the State intentionally violated the trial court's order excluding information about the source of the photographs in the bulletin. Hauser pointed out that the violation occurred when "the State's witnesses identified the sources of photographs used in their bulletin; specifically, 'mugshots' and photographs that were in 'the possession of the police.' " Clerk's Papers at 385. Hauser said these references were intentional because the witnesses were told not to mention the source of the photos but did so anyway.

At the hearing on the motion, Hauser argued:

> I think the record was clear on what the issue was and *the deliberateness of the violation*, especially after the Court specifically instructed parties to refrain from certain information. *That was deliberately done.* That placed us in a horrible position because, as we read, the jury and, I think, the verdicts kind of bear out that significant reasonable doubt was present, and *that but for the deliberate violation of the Court's instructions, the jury verdict may have been done.* So I can't just dismiss this as mere harmless error.

RP at 1488 (emphasis added).

7

The State argued that the references to booking photos and the reference to a photo being taken by the police did not inform the jury of Hauser's previous convictions. And it argued that the split verdict showed that the jury's verdict rested on a "honest, forthright, and careful analysis of the evidence." RP at 1488.

After hearing argument on the motion, the trial court stated,

THE COURT: I had the opportunity to make rulings and to listen to the testimony as it came out. The testimony as it came out appeared to me to be much more inadvertent than it was. Certainly, I guess, *I will say from my own observation that it did not appear to be an intentional violation of my order*. It certainly did appear to be an inadvertent violation of my order. That was clearly a violation of what I had ordered. I don't disagree with that.

On the other hand, I do agree with [the State]. I wrote in the margin of his brief that there was no -- *there was no discussion about any prior criminal history that Mr. Hauser may or may not have had.*

RP at 1488-89 (emphasis added). The court denied the motion.

*Sentencing*

At sentencing, the State informed the trial court that Hauser had two previous convictions that were most serious offenses under the POAA. The State introduced copies of the judgment and sentences from those cases.

The first most serious offense was a conviction for second degree kidnapping entered on June 5, 2007. The judgment and sentence stated the date of this crime was September 25, 2006. The second most serious offense was a conviction for second degree assault, entered on February 18, 2014. The judgment and sentence stated the date of this crime was on July 12, 2012.

The defendant did not argue that a jury, rather than the judge, was required to find that he committed the alleged strike offenses on separate occasions. Nor did he assert that the POAA was unconstitutional.

After the parties' sentencing arguments, the trial court stated,

> Given the verdicts of the jury and the exhibits that have proved up the underlying convictions that Mr. Hauser has, it does appear to me as though he's eligible for the sentence of life without the possibility of parole, and, in fact, that's the only sentence available to him, given his criminal history. With regard to Counts 2 and 5, I will sentence Mr. Hauser to life without the possibility of parole as a persistent offender.

RP at 1492-93.

Hauser appeals his convictions and his sentence.

## ANALYSIS

A.   SUFFICIENCY OF THE EVIDENCE – FIRST DEGREE KIDNAPPING

Hauser argues that evidence was insufficient to convict him of first degree kidnapping because the evidence did not show that Hauser kidnapped AH with the intent to rape her. We disagree.

### 1.   Standard of Review

When evaluating the sufficiency of evidence for a conviction, we view the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Bergstrom*, 199 Wn.2d 23, 40-41, 502 P.3d 837 (2022). We assume the truth of the State's evidence and all reasonable inferences that may be drawn therefrom. *Id*. at 41. These inferences must be construed in the State's favor and strongly against the defendant. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). And we defer to the trier of fact's resolution of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *Bergstrom*, 199 Wn.2d at 41.

### 2.   Legal Principles

RCW 9A.40.020(1) provides five alternative means of committing first degree kidnapping. *State v. Harrington*, 181 Wn. App. 805, 817-18, 333 P.3d 410 (2014). A kidnapping conviction requires only the intent to carry out one of the means enumerated in RCW

9

9A.40.020(1), not that the perpetrator actually complete one of those qualifying means. *State v. Louis*, 155 Wn.2d 563, 571, 120 P.3d 936 (2005).

The State relied on RCW 9A.40.020(1)(b) at trial, which states that a person commits first degree kidnapping when "he or she intentionally abducts another person with the intent . . . [t]o facilitate the commission of any felony." Specifically, the State alleged that Hauser kidnapped AH with the intent to facilitate rape. First degree rape occurs when a person "engages in sexual intercourse with another person [b]y forcible compulsion" and kidnaps that person. RCW 9A.44.040(1)(a)(ii). Therefore, to convict Hauser of first degree kidnapping, the State had to present sufficient evidence that he kidnapped AH with the intent to engage in sexual intercourse with her by forcible compulsion.

RCW 9A.08.010(1)(a) provides that "[a] person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." Intent can be inferred by a defendant's conduct when that conduct and the " 'surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.' " *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)); *see also In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 726-31, 543 P.3d 821 (2024) (stating that specific intent may be inferred from conduct).

Here, the jury failed to return a verdict on the rape charges. However, "jury convictions on separate counts should not be disturbed, despite inconsistencies, so long as there is sufficient evidence to support the conviction." *State v. Goins*, 151 Wn.2d 728, 734, 92 P.3d 181 (2004); *see also State v. Ng*, 110 Wn.2d 32, 48, 750 P.2d 632 (1988) ("Where the jury's verdict is supported by sufficient evidence . . . we will not reverse on grounds that the guilty verdict is

inconsistent with an acquittal on another count."). This rule protects a jury's ability to return a verdict that is the product of lenity or compromise. *Id.* at 46-48.

    3.    Analysis

The State presented testimony from AH that Hauser restrained her and then either sexually assaulted her, or attempted sexually assault her, on several different occasions. AH also testified that Hauser ripped her pants off after he tied her to the work bench and that she was kept naked from the waist down when she was restrained in the truck. We assume this evidence is true and interpret all reasonable inferences therefrom in favor of the State. *Bergstrom*, 199 Wn.2d at 41. The evidence that Hauser either attempted or completed sexual assaults against AH after he abducted her supports the inference that he had the intent to facilitate those rapes when he abducted her.

In addition, the State presented evidence that AH reported that she was sexually assaulted to civilian witnesses, to firefighters who responded to where she was found, and to Komomua during her sexual assault examination. And investigators testified that they found a box of condoms near the truck where AH was restrained, as well as ropes and chains attached to that truck. We conclude that a reasonable juror could infer from these circumstances that Hauser intended to facilitate the commission of a rape against AH when he abducted her.

Hauser argues that there was insufficient evidence to convict him for first degree kidnapping because the jury did not reach a verdict on the rape or attempted rape charges. His argument is unconvincing for two reasons. First, the first degree kidnapping statute requires only that Hauser intended to facilitate the commission of rape, not that he actually attempted or committed the rape. RCW 9A.40.020(1)(b); *Louis*, 155 Wn.2d at 571. Second, apparent

inconsistency between verdicts is not grounds to reverse a conviction as long as there is sufficient evidence supporting the convictions. *Goins*, 151 Wn.2d at 734; *Ng*, 110 Wn.2d at 48.

Hauser also argues that *State v. Aguilar*, 27 Wn. App. 2d 905, 534 P.3d 360 (2023) supports his position. In that case, the jury was instructed on all five alternative means for elevating a kidnapping to first degree kidnapping and the jury did not specify which means it relied on to find Aguilar guilty. *Id.* at 931-32. The court vacated a first degree rape conviction because the State did not present evidence on one of the alternative means for rape on which the jury was instructed. *Id.* at 919-22. The court also vacated Aguilar's first degree kidnapping charge because it could not conclude that "the jury determined that Aguilar kidnapped [the victim] with the intent to facilitate rape." *Id.* at 932.

Here, the jury was instructed on only one of the alternative means for committing first degree kidnapping, intent to facilitate rape. And the jury returned a verdict explicitly finding that Hauser kidnapped AH with the intent to facilitate rape. Therefore, *Aguilar* is inapplicable.

Accordingly, we hold that the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that when Hauser abducted AH, he intended to facilitate the commission of a rape against her.

B.    MOTION FOR NEW TRIAL

Hauser argues that the trial court abused its discretion when it denied his motion for a new trial based on improper testimony revealing the source of the photographs of his tattoos. The State argues that Hauser cannot raise this argument on appeal because in the trial court he did not assert the basis for a new trial on which he relies on appeal. We agree with the State.

Under RAP 2.5(a), we "may refuse to review any claim of error which was not raised in the trial court." These rules are intended to preserve judicial resources "by ensuring that the trial

court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Hamilton*, 179 Wn. App. 870, 878, 320 P.3d 142 (2014) (argument unpreserved even though party opposed admission of evidence on other grounds in trial court). Therefore, to preserve an error for appeal, the " 'party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error.' " *State v. Clare*, 30 Wn. App. 2d 309, 315, 544 P.3d 1099, *review denied*, 3 Wn.3d 1011 (2024) (quoting *State v. Lazcano*, 188 Wn. App. 338, 355, 354 P.3d 233 (2015). "A party may assign evidentiary error on appeal *only on a specific ground made at trial*." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (emphasis added). We "will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

In the trial court, Hauser based his new trial motion only on CrR 7.5(a)(1) and (2). The motion was premised on the State's intentional violation of the court order, and the receipt of evidence not allowed by the court. The trial court denied the new trial motion because it did not believe that the violation was intentional.

On appeal, Hauser argues only that Cenicola and Quilio's comments were prejudicial trial irregularities under CrR 7.5(a)(5). But he did not argue that trial irregularities warranted a new trial to the trial court. Therefore, the trial court did not have the opportunity to address this argument. And Hauser does not address CrR 7.5(a)(1) and (2) on appeal.

Because Hauser did not argue in the trial court that a new trial was warranted under CrR 7.5(a)(5), he cannot now raise that issue for the first time on appeal.[2] *Kirkman*, 159 Wn.2d at

---

[2] Hauser does not argue that any exceptions to RAP 2.5(a) apply to this issue.

926.  Accordingly, we decline to reach the issue, and we affirm the trial court's denial of Hauser's new trial motion.

C.  CONSTITUTIONALITY OF THE PERSISTENT OFFENDER ACCOUNTABILITY ACT

Hauser argues that his sentence is unconstitutional because the POAA is applied in a racially discriminatory manner.  We disagree.

1.  Legal Principles – POAA

The POAA addresses the sentencing of persistent offenders.  RCW 9.94A.570.  A persistent offender is an offender who before commission of the current offense, has on two separate occasions been convicted of felonies that are most serious offenses.  RCW 9.94A.030(37)(a)(i)-(ii).  If a defendant has committed three most serious offenses on separate occasions, the offender must be sentenced to LWOP.  RCW 9.94.570.  RCW 9.94A.030(32) defines which offenses constitute "most serious offenses."

2.  Failure to Raise Issue in Trial Court

Initially, the State argues that Hauser did not preserve the POAA issue for appeal because he did not challenge the constitutionality of the POAA in the trial court.  The State claims that the issue does not constitute manifest constitutional error under RAP 2.5(a)(3) because it depends solely on evidence outside the record that was not submitted to the trial court.

In *Nelson*, this court exercised its discretion to the consider the unpreserved POAA challenge.  31 Wn. App. 2d at 510-11.  We do the same here.

3.  Constitutionality of POAA

Hauser relies on *State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018) to argue that the POAA is unconstitutional.  In *Gregory*, the Supreme Court held that the death penalty was unconstitutional as administered.  *Id.* at 35.  The court concluded, "When the death penalty is

imposed in an arbitrary and racially biased manner, society's standards of decency are even more offended. Our capital punishment law lacks 'fundamental fairness' and thus violates article I, section 14." *Id.* at 24 (quoting *State v. Bartholomew*, 101 Wn.2d 631, 640, 683 P.2d 1079 (1984)).

This court addressed and rejected a similar racial disproportionality challenge to the POAA in *Nelson*. 31 Wn. App. 2d at 511-17. Nelson was sentenced to LWOP based on three convictions for most serious offenses under the POAA. *Id*. at 512. The court held that the POAA was not applied in an arbitrary and "racially disproportionate manner as in *Gregory*." *Id*. at 517.

The holding in *Nelson* was based on the different procedures involved with the POAA and the death penalty. *Id*. at 515. The court observed that the death penalty was administered "on a case-by case basis," and it involved discretionary decisions by prosecutors, judges, juries, and the Supreme Court. *Id*. at 515-516. By contrast, the POAA allows a trial court no discretion at sentencing because any offender who commits three "most serious offenses" must be sentenced to LWOP under the POAA. *Id.* at 516. The Supreme Court denied review of this court's decision in *Nelson*. 3 Wn.3d 1030.

We follow the *Nelson* analysis. And Hauser does not explain why we should depart from the reasoning in that case. We hold that the POAA is not unconstitutional as administered.

D.    TRIAL COURT FINDING ON PREVIOUS CONVICTIONS

Hauser argues that under *Erlinger*, 602 U.S. 821, the fact that his previous convictions occurred on separate occasions could only be found by a jury and not by the trial court. We disagree.

The Fifth Amendment of the United States Constitution guarantees that no person should "be deprived of life, liberty, or property, without due process of law." The Sixth Amendment guarantees criminal defendants the right to a speedy trial by an impartial jury of their peers. The United States Supreme Court has interpreted these amendments to generally require "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d, 435 (2000). There is a narrow exception to this rule: the trial court may "undertake the job of finding the fact of a prior conviction – and that job alone." *Erlinger*, 602 U.S. at 837.

After *Apprendi* and its progeny, our Supreme Court has held that application of the POAA does not require a jury determination. *E.g.*, *State v. Witherspoon*, 180 Wn.2d 875, 893, 329 P.3d 888 (2014) ("[I]t is settled law in this state that the procedures of the POAA do not violate federal or state due process. Neither the federal nor state constitution requires that previous strike offenses be proved to a jury."). And our Supreme Court has stated "All that is required by the constitution and the [POAA] statute is a sentencing hearing where the trial judge decides by a preponderance of the evidence *whether the prior convictions exist*." *State v. Wheeler*, 145 Wn.2d 116, 121, 34 P.3d 799 (2001) (emphasis added).

Hauser acknowledges that a trial court can find the existence of prior convictions. However, he emphasizes that the POAA requires the court to find that the defendant was convicted of two separate most serious offenses before the commission of the current offense. The inquiry requires additional factual findings beyond the existence of the prior offenses, which Hauser argues must be determined by a jury.

16

Hauser's argument is inconsistent with Washington law. In *State v. Jones*, the Supreme Court rejected an argument that trial courts can find "only the mere fact of a prior conviction and should not include facts that flow directly from the fact of a prior conviction." 159 Wn.2d 231, 241, 149 P.3d 636 (2006). The court stated, "To give effect to the prior conviction exception, Washington's sentencing courts must be allowed as a matter of law to determine not only the fact of a prior conviction but also those facts 'intimately related to [the] prior conviction.' " *Id.* (quoting *United States v. Moore,* 401 F.3d 1220, 1225 (10th Cir. 2005)) (alteration in original). The court concluded that the prior conviction exception "encompass[es] facts that follow necessarily or as a matter of law from the fact of a prior conviction." *Jones*, 159 Wn.2d at 243.

In *State v. Brinkley*, Division One of this court expressly rejected the same argument Hauser makes here. 192 Wn. App. 456, 459-64, 369 P.3d 157 (2016). The court acknowledged that "[u]nder the [POAA], the court must determine the date of the prior convictions to see if they occurred before commission of the present offense. Next, the court must determine the date of one of the earlier offenses and decide whether it followed the date of the other prior conviction." *Id.* at 460. But the court relied on *Jones* to hold that finding these facts did not require a jury. *Id.* at 464. The court concluded,

> [T]he "prior conviction" exception includes not only the fact of the conviction itself but also "facts intimately related to the prior conviction." *Jones,* 159 Wn.2d at 241. As the Fourth Circuit observed, a prior conviction cannot "be reduced to nothing more than that the defendant was at some prior time convicted of some crime" and therefore, should include "other operative facts." *United States v. Thompson,* 421 F.3d 278, 282 (4th Cir. 2005). The dates of Brinkley's prior convictions, the dates of the prior offenses, and the offenses resulting in the prior convictions are all facts that fall within the facts of prior conviction exception.

*Id.*

Hauser argues that Erlinger essentially has overruled existing Washington law. In *Erlinger*, the United States Supreme Court held that the fact determination of whether qualifying

17

convictions were part of different occasions under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), was a question that must be sent to the jury. 602 U.S. at. 831. But the Court expressly limited its ruling to the ACCA. *Id*. at 835. The Court noted that there had been criticism of the prior conviction exception, but it did not revisit that rule. *Id*. at 837-38.

Both this court and Division One have decided that the holding in *Erlinger* is limited to the "different occasions" inquiry under the ACCA and does not overrule existing Washington precedent. *State v. Frieday*, 33 Wn. App. 2d 719, 747-48, 565 P.3d 139, *review denied*, 574 P.3d 539 (2025); *State v. Anderson*, 31 Wn. App. 2d 668, 681, 552 P.3d 803, *review denied*, 3 Wn.3d 1034 (2024). We agree with these cases, and we conclude that *Erlinger* does not overrule existing Washington case law. Accordingly, we find no constitutional error.

CONCLUSION

We affirm Hauser's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

PRICE, J.