168 P.3d 430 (2007)
STATE of Washington, Respondent,
v.
Carlton Roosevelt RUDOLPH, Appellant.
No. 32658-2-II.
Court of Appeals of Washington, Division 2.
October 2, 2007.
*431 David Mathews Soukup, Thurston County Prose Atty Ofc, Olympia, for Respondent.
Thomas Edward Doyle, Hansville, Patricia Anne Pethick, Tacoma, for Appellant.

PUBLISHED in part OPINION
HUNT, J.
¶ 1 Carlton Roosevelt Rudolph appeals his jury conviction for first degree robbery and his life-without-parole sentence imposed under the Persistent Offender Accountability Act (POAA).[1] He argues that (1) the POAA is unconstitutional because it allows the trial court, rather than requiring a jury, to find the "fact" of a prior conviction used as a prior "strike" offense; (2) the trial court, therefore, made impermissible factual findings about Rudolph's identity as the perpetrator of prior convictions; (3) the trial court erred when it ruled that a prior Illinois offense was factually comparable to a Washington "strike" offense for POAA sentencing purposes; and (4) because the information did not charge an alternative means of committing robbery, the trial court improperly included an alternative means in the to-convict jury instruction and failed to give an alternative-means unanimity instruction.
¶ 2 We hold that under Almendarez-Torres,[2]Apprendi,[3] and Blakely,[4] the POAA is a constitutionally permissible statute and, therefore, Ruldolph had no right to a jury trial on the issue of whether he was the person who committed previous strike offenses that subject him to a POAA sentence of life without parole. Accordingly, the trial court properly entered findings about Rudolph's prior convictions, including his identity as the perpetrator. We also hold that Rudolph's prior Illinois offense is legally comparable to a Washington POAA "strike" offense and that any error in the information and/or instructions was harmless. We affirm.

FACTS

I. Robbery
¶ 3 In May 2004, Carlton Rudolph stole money from a fabric store cash register. The store clerk confronted and engaged Rudolph in a brief physical altercation, bruising her leg. Rudolph grabbed the clerk's wallet from near the cash register and fled with the cash and the wallet. The clerk later identified Rudolph, in a photomontage, as the man who had robbed her.

II. Procedure
¶ 4 The State charged Rudolph with one count of first degree robbery. When the trial court instructed the jury on the elements of the crime, neither the State nor Rudolph objected. The jury found Rudolph guilty of first degree robbery. At sentencing, the State proved to the court that that Rudolph was a persistent offender under the POAA, based on prior Florida and Illinois convictions.

A. Prior Illinois Home Invasion
¶ 5 The State presented 10 exhibits in support of its POAA sentencing recommendation of life imprisonment without parole. These exhibits included: (1) a clerk's "fact sheet" noting that the Illinois home invasion conviction referred to "John Williams AKA Clarence Rudolph"; (2) a certified fingerprint comparability analysis from the Washington State Patrol (WSP) Identification Section, *432 comparing Rudolph's fingerprints, taken when he was in custody for the current offense, to the fingerprints of "John Williams" from Illinois and finding them to have been made by the same person; and (3) a certified statement of conviction/disposition attached to a computer printout of clerk's entries listing Rudolph's Illinois convictions for home invasion, residential burglary, armed robbery, and burglary. Although at sentencing Rudolph argued that he was not the "John Williams" who had committed the Illinois home invasion, he neither disputed the accuracy of the fingerprint evidence, Report of Proceedings (Dec. 10, 2004) at 18-19, nor denied the fact of his identity under oath.
¶ 6 Based on the WSP fingerprint comparison and the certified fingerprint evidence from Illinois, the trial court found, by a preponderance of the evidence, that "John Williams" from Illinois and Carlton Rudolph were the same person. The trial court further found that the Illinois home invasion was factually comparable to Washington's first degree burglary.[5] Therefore, the trial court counted Rudolph's Illinois home invasion conviction as a prior "strike" offense under the POAA.

B. Prior Florida Felony Convictions
¶ 7 The trial court also concluded that there was no real dispute about Rudolph's prior Florida felony convictions because (1) the certified multiple felony Judgment and Sentence documents[6] clearly proved these convictions, and (2) they were clearly comparable to at least one Washington "strike" offense for POAA purposes. More specifically, the trial court found that Rudolph's robbery conviction under Fla. Stat. 812-13 was legally comparable to robbery under Washington's RCW 9A.56.190. Therefore, the trial court counted Rudolph's Florida robbery conviction as a "strike" under the POAA.
¶ 8 As a result, the trial court found that Rudolph was a persistent offender and sentenced him to life imprisonment without parole. Rudolph appeals his conviction and POAA sentence.

ANALYSIS

I. Persistent Offender  Constitutionality
¶ 9 Citing Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Rudolph argues that Washington's POAA sentencing procedures are unconstitutional because they allow the trial court to make factual findings about prior convictions, which increase punishment, rather than requiring a jury to make these findings. The State responds that we have already resolved this issue contrary to Rudolph's position in State v. Ball, 127 Wash.App. 956, 113 P.3d 520 (2005), review denied, 156 Wash.2d 1018, 132 P.3d 734 (2006), in which we held that the POAA is a recidivism statute not subject to Blakely analysis.[7] We decline to reverse Ball and, instead, adhere to our previous holding that POAA sentencing procedures are not subject to Blakely.[8]

A. Continuing Validity of Fact of a Prior Conviction Exception
¶ 10 At the outset, we reiterate a long-standing rule of statutory construction: We presume statutes to be constitutional. State v. Moore, 79 Wash.2d 51, 57, 483 P.2d 630 (1971).
¶ 11 In 1991, in State v. Thorne, the Washington Supreme Court decided that, because the essential elements of a crime must be set out in the charging document, the POAA would be unconstitutional only if it created a separate offense that the charging document *433 did not allege. 129 Wash.2d 736, 779, 921 P.2d 514 (1996) (citing State v. Kjorsvik, 117 Wash.2d 93, 812 P.2d 86 (1991)). Ten years later, in State v. Wheeler, our Supreme Court reexamined Thorne in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and held that the POAA did not create a separate offense because the POAA did not define or specify the elements of a crime; therefore, neither the federal constitution nor the Sentencing Reform Act of 1981 (chapter 9.94A RCW) ("SRA") required prior convictions resulting in a life sentence under the POAA to be pleaded in the information, submitted to a jury, or proved beyond a reasonable doubt.[9] 145 Wash.2d 116, 117, 121, 34 P.3d 799 (2001), cert. denied, 535 U.S. 996, 122 S.Ct. 1559, 152 L.Ed.2d 482 (2002); see also State v. Smith, 150 Wash.2d 135, 156, 75 P.3d 934 (2003), cert. denied, 541 U.S. 909, 124 S.Ct. 1616, 158 L.Ed.2d 256 (2004) (discussing Wheeler's continued validity in light of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi, and stating: "[N]either the sixth amendment to the United States Constitution nor article I, sections 21 and 22 of the Washington Constitution includes the right to a jury determination of prior convictions at sentencing."); State v. Rivers, 130 Wash.App. 689, 694-95, 128 P.3d 608 (2005) (citing Smith and holding that Blakely and Ring did not alter the holdings in Smith or Wheeler).
¶ 12 The United States Supreme Court's subsequent decision in Blakely excludes the fact of prior convictions from its constitutionally-based jury trial requirement in Apprendi for facts that increase the penalty beyond what the court could impose without additional factual findings.[10]Blakely, 542 U.S. at 313, 124 S.Ct. 2531. Therefore, Blakely does not affect Wheeler's holding that imposing a life sentence without parole under the POAA is constitutional.
¶ 13 Accordingly, we decline to depart from our holding in Ball that the POAA is a recidivism statute: A life sentence under the POAA depends only on the fact of prior convictions; therefore, Blakely does not apply. The Almendarez-Torres exception to the jury trial requirement remains for facts of a prior conviction that can be proved by trustworthy documentation.[11]Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

B. Lavery

¶ 14 Rudolph argues, and the dissent agrees, that our ruling in Ball contradicts the Supreme Court's previous decision in In re Pers. Restraint of Lavery, 154 Wash.2d 249, 111 P.3d 837 (2005). In Lavery, our Supreme Court held that a sentencing court cannot determine disputed facts relating to the factual comparability of a prior federal crime used as a strike offense for POAA sentencing purposes. 154 Wash.2d at 256-57, 261-62, 111 P.3d 837. The Court did not hold, however, that a jury could or must determine such facts under these circumstances. Id. at 257-58, 111 P.3d 837. Rather, *434 it held that if the sentencing court cannot determine the relevant facts from the appropriate record, no fact finder, be it court or jury, can find the facts necessary to establish factual comparability of a broader foreign offense. Id.[12]Lavery simply did not reach the issue here: whether a court or a jury must make new factual determinations related to facts implicit in the fact of a prior conviction, such as identity of the perpetrator.
¶ 15 Moreover, we acknowledged Lavery in a footnote in Ball,[13] and our Supreme Court denied Ball's petition for review. We are well aware that the Supreme Court's denial of review is not an expression of their implicit acceptance of our decision in Ball. Nevertheless, Rudolph does not persuade us that the Supreme Court viewed our decision in Ball as inconsistent with its decision in Lavery either then or in the two years since. Nor does Rudolph persuade us that we should now overrule Ball.
¶ 16 Thus, we hold that the Almendarez-Torres prior-conviction exception remains and it applies to Washington's POAA: The Constitution requires neither a jury finding nor proof beyond a reasonable doubt of the fact of a prior conviction. Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. Accordingly, Rudolph does not overcome the presumption that the POAA is constitutional.

II. Scope of Prior-Conviction Exception: Identity Issue
¶ 17 Rudolph also argues, and the dissent asserts, that Blakely limits Almendarez-Torres's prior-conviction exception by requiring a jury to decide the issue of whether the present and the prior perpetrators are the same person, where the defendant contests identity. This issue goes to the scope of the fact-of-a-prior-conviction exception. Again, we disagree.
¶ 18 At the outset, contrary to Rudolph's and the dissent's assertions, we adhere to our holding that neither Blakely nor Apprendi apply to the fact of Rudolph's prior convictions, including the "intimately related,"[14] intrinsic fact of the prior perpetrator's identity. Consistent with our holding, the dissent frankly acknowledges that "[t]he United States Supreme Court has never directly ruled on whether, under a recidivist sentencing statute, a defendant contesting identity has a right to jury trial under the Apprendi/Blakely `prior conviction' exception." Dissent at 440. Nonetheless, the dissent advocates, "[I]t is no longer appropriate to hold categorically that the Sixth Amendment does not require a jury trial in a POAA sentencing proceeding." Dissent at 442. We respectfully disagree.

A. Jones' Holding
¶ 19 In our view, there is neither precedent nor justification to predict what the United States Supreme Court might hold under the facts here and then to apply an anticipatory, speculative new rule, especially in light of our Supreme Court's recent, seemingly contrary, post-Blakely and post-Lavery decision in *435 State v. Jones, 159 Wash.2d 231, 241, 149 P.3d 636 (2006). In Jones, the Court addressed issues closely related to the identity issue here and concluded that "[t]o give effect to the prior-conviction exception, Washington's sentencing courts must be allowed as a matter of law to determine not only the fact of a prior conviction but also those facts `intimately related to [the] prior conviction.'" Id. at 241, 149 P.3d 636 (emphasis added).
¶ 20 In Jones, a five-justice majority of our Supreme Court expressly rejected the contention that the Almendarez-Torres prior-conviction exception no longer exists.[15]Jones, 159 Wash.2d at 239 n. 7, 149 P.3d 636. The Court stated:
To give effect to the prior[-]conviction exception, Washington's sentencing courts must be allowed as a matter of law to determine not only the fact of a prior conviction but also those facts "intimately related to [the] prior conviction" such as the defendant's community custody status.
Jones, 159 Wash.2d at 241, 149 P.3d 636 (emphasis added) (quoting United States v. Moore, 401 F.3d 1220, 1225 (10th Cir.2005), and citing United States v. Mattix, 404 F.3d 1037, 1038 (8th Cir.2005)) (per curiam) (courts have long considered prior criminal history as a sentencing factor for a court to decide rather than a fact issue for the jury and the Supreme Court has not changed that rule, pointing to United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and Shepard v. United States, 544 U.S. 13, 27, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)).
¶ 21 If, as our Supreme Court held in Jones, a defendant's community custody status is a fact "intimately related to [the] prior conviction," then surely the identity of a prior crime's perpetrator is similarly a fact "intimately related to [the] prior conviction," which falls under the prior-conviction exception to the Blakely jury requirement. Rudolph does not point to any authority that allows us to ignore Jones and to conclude, instead, that the Almendarez-Torres prior-conviction exception no longer exists. This lack of authority is especially glaring in the context of proving prior perpetrator identity, which, as Jones noted, is most "intimately related to" the fact of the prior conviction itself. Jones, supra.
¶ 22 Furthermore, mere speculation that the United State Supreme Court might eventually reject the Almendarez-Torres prior-conviction exception does not justify our rejection of the prior-conviction exception preemptively, as the dissent would have us do. See e.g. Jones, 159 Wash.2d at 240 n. 7, 149 P.3d 636 ("Even if we were inclined to agree with the dissent's unstated assertion that it is only a matter of time before that case is overruled, we are certainly not free to overrule or ignore established Supreme Court precedent," citing State Oil Co. v. Khan, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). "[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents."). On the contrary, in light of the United States Supreme Court's and the Washington Supreme Court's continued adherence to excepting the fact of prior convictions from Apprendi's and Blakely's jury trial requirement, we believe it improvident for us to extend Blakely to apply to proof of identity, which is intrinsic to the clearly excepted fact of a prior conviction itself.[16]

*436 B. Jones' Dicta
¶ 23 Insofar as the dissent seeks to rely on dicta in Lavery, we recite at the outset our Supreme Court's recent admonition that we should not treat as dispositive its rulings that do not "answe[r] the questions presented in the case at bar." State v. Frost, 160 Wash.2d 765, 775, 161 P.3d 361 (2007).
¶ 24 Nevertheless, if, as the dissent urges, we are to look to Supreme Court dicta for guidance in answering questions that our Supreme Court has not yet expressly addressed, then in our view, it is logical to look to its most recent relevant dicta. Our Supreme Court decided Jones a year after it decided Lavery. Especially in comparison with Lavery, the Court's dicta in Jones is both directly on point and the most recent pronouncement of its view on the issue before us. In a footnote, the Jones Court stated:
[W]e join the Second Circuit Court of Appeals in rejecting the argument that the prior[-]conviction exception applies only when the prior conviction and facts related thereto may be determined with ease and/or without challenge. See [United States v.] Santiago, 268 F.3d [151,] 156 [(2nd Cir.2001)] ("While the Almendarez-Torres exception to the Apprendi rule . . . typically involves a relatively uncontested record, this is by no means always the case. The determination of `the fact of a prior conviction' implicitly entails many subsidiary findings, not the least of which is that the defendant [presently] being sentenced is the same defendant who . . . was convicted of those prior offenses, a fact that could be quite controversial indeed." (emphasis added) (emphasis omitted)).
Jones, 159 Wash.2d at 244 n. 8, 149 P.3d 636 (emphasis added).
¶ 25 This explanation in Jones directly acknowledges that identity may be an issue relevant to determining whether a prior conviction was committed by the defendant being sentenced. But Jones neither holds nor suggests that the Almendarez-Torres exception to the jury requirement does not apply to identity; instead, it suggests a contrary result.
¶ 26 Nor does Jones require a jury to decide the fact of a prior perpetrator's identity. Jones not only holds that the sentencing court can determine facts closely related to and implicit in finding the fact of a prior conviction, but it also specifically notes that included in the realm of such closely related facts is identity, namely that the defendant being sentenced is the same defendant who was convicted of the prior enumerated offenses. Jones, 159 Wash.2d at 244 n. 8, 149 P.3d 636. But even aside from this dicta in Jones, we can think of no fact more intimately related to the fact of a prior conviction than the identity of the defendant.
¶ 27 Accordingly, we hold that (1) existing caselaw does not give Rudolph the right to have a jury decide whether he is the same defendant who committed the crimes resulting in his prior convictions used as strike offenses to establish his persistent offender status under the POAA and, thus, subject him to life imprisonment without parole for his new crime; (2) identity is a fact so "intimately related to [the] prior conviction," under Jones, as to be virtually inseparable from the finding of the existence of a prior conviction; (3) the Almendarez-Torres fact-of-the-prior-conviction exception to the Apprendi/Blakely jury-trial requirement necessarily includes identity; and (4) thus, Apprendi and Blakely do not require a jury to decide the identity component of the fact of a prior conviction. Therefore, the sentencing court may, as it did here, find by a preponderance of the evidence that the perpetrator of the present crime is the same person as the perpetrator of a prior crime used as a strike offense for POAA sentencing purposes.
¶ 28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
I concur: VAN DEREN, A.C.J.
*437 QUINN-BRINTNALL, J., (dissenting).
¶ 41 I concur with that portion of the majority opinion affirming Carlton Roosevelt Rudolph's first degree robbery conviction and finding the Illinois home invasion statute a most serious offense under Washington law. But because I believe that the Sixth Amendment to the United States Constitution controls, I respectfully dissent from that portion of the opinion affirming Rudolph's sentence of life without possibility of parole.
¶ 42 A criminal defendant's jury trial right is the foundation and heart of our criminal justice system. Countless law-abiding patriotic Americans have given their lives to protect this right for others; even, and maybe especially, those who repeatedly or routinely break our laws. In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Justice Scalia, writing for the majority, concluded bluntly:
The Framers would not have thought it too much to demand that, before depriving a man of . . . his liberty, the State should suffer the modest inconvenience of submitting its accusation to "the unanimous suffrage of twelve of his equals and neighbours," [4 W. Blackstone, Commentaries on the Laws of England 343 (1769)], rather than [the judge,] a lone employee of the State.
Blakely, 542 U.S. at 313-14, 124 S.Ct. 2531.
¶ 43 Except on a jury's verdict finding a defendant guilty of aggravated first degree murder, no Washington trial court may impose a sentence of life without possibility of parole based on the jury's verdict alone. Contrary to the majority opinion, the requirement for a jury trial is a bright-line rule, not dicta. Blakely, 542 U.S. at 308, 124 S.Ct. 2531. In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. And in Blakely, the Court clarified that "statutory maximum" means the maximum sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis omitted). In other words, the "statutory maximum" is the maximum that a judge may impose "without any additional findings." Blakely, 542 U.S. at 303-04, 124 S.Ct. 2531 (emphasis omitted).
¶ 44 Recidivist statutes, such as the Persistent Offender Accountability Act (POAA), have been part of American sentencing for over one hundred years. And dating back to at least 1912, courts and commentators have recognized that these habitual criminal prosecutions require proof of two matters: (1) the existence of prior convictions and (2) the identity of the defendant as the prior convict. See, e.g., Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); United States v. Jackson, 368 F.3d 59, 67-68 n. 9 (2d Cir.2004); Kyron Huigens, Solving the Apprendi Puzzle, 90 Geo. L.J. 387, 408 (2002). Historically, the State was required to prove to a jury beyond a reasonable doubt that the defendant to be sentenced under a recidivist statute was the person who was previously convicted of statutorily qualifying offenses. See State v. Furth, 5 Wash.2d 1, 10, 104 P.2d 925 (1940).
¶ 45 Under the current POAA statutes, the legislature requires that trial courts sentence "persistent offenders" to life without possibility of parole. RCW 9.94A.570. A "persistent offender" is an offender with three "strikes," convictions for felonies that are "most serious offenses" as defined in former RCW 9.94A.030(28) (2003). Former RCW 9.94A.030(32)(a)(i), (ii); State v. Crawford, 159 Wash.2d 86, 89-90, 147 P.3d 1288 (2006). Prior foreign convictions, including out-of-state convictions, are strikes if they are comparable to a Washington strike offense. Former RCW 9.94A.030(32)(a)(ii); In re Pers. Restraint of Lavery, 154 Wash.2d 249, 254, 111 P.3d 837 (2005). A trial court must sentence a defendant to life without possibility of parole upon a conviction for a third strike offense. RCW 9.94A.570.
¶ 46 When the Washington legislature enacted the POAA, it withdrew this right to jury trial. In a POAA proceeding, the legislature authorized judges to find, under a *438 preponderance of evidence standard, whether the defendant was a habitual criminal. Our Supreme Court held this procedure was constitutionally permissible and ruled that prior convictions resulting in a life without parole sentence need not be pleaded in the information, submitted to a jury, or proved beyond a reasonable doubt. State v. Wheeler, 145 Wash.2d 116, 117, 34 P.3d 799 (2001), cert. denied, 535 U.S. 996, 122 S.Ct. 1559, 152 L.Ed.2d 482 (2002).
¶ 47 The Washington Supreme Court addressed the question of whether a defendant's constitutional right to a jury trial is violated in a POAA proceeding in State v. Thorne, 129 Wash.2d 736, 921 P.2d 514 (1996). Relying on pre-Apprendi case law, the court held that judicial sentencing under the POAA did not violate the right to jury trial:
As a practical matter, since the only two questions of fact relevant to sentencing under the persistent offender section of the [Sentencing Reform Act (SRA)] are whether certain kinds of prior convictions exist and whether the defendant was the subject of those convictions, we fail to see how the presence of a jury would be necessary. Prior convictions are proved by certified copies of the judgment and sentence, [State v. Murdock, 91 Wash.2d 336, 340, 588 P.2d 1143 (1979)], and identity (if contested) can be proved by fingerprints. The sentencing judge can make those determinations. While technically questions of fact, they are not the kinds of facts for which a jury trial would add to the safeguards available to a defendant. In fact, judges decide such questions of fact routinely at SRA sentencing proceedings. A certified copy of a judgment and sentence is highly reliable evidence. State v. Gentry, 125 Wash.2d 570, 637, 888 P.2d 1105, cert. denied, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 79 (1995); see [United States v. McGatha, 891 F.2d 1520, 1526 (11th Cir.), cert. denied, 495 U.S. 938, 110 S.Ct. 2188, 109 L.Ed.2d 516 (1990)] (prior convictions are highly verifiable matters of public record). We find no constitutional bar to the provision of the SRA which allows a trial court to conduct the sentencing proceedings. RCW 9.94A.110.
Thorne, 129 Wash.2d at 783, 921 P.2d 514 (cited by Almendarez-Torres v. United States, 523 U.S. 224, 246-47, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)) (quoted in State v. Smith, 150 Wash.2d 135, 148, 75 P.3d 934 (2003), cert. denied, 541 U.S. 909, 124 S.Ct. 1616, 158 L.Ed.2d 256 (2004)). In summary, the Thorne court held that it is not necessary to impanel a jury for POAA sentencing because judges traditionally find these facts and the evidence is reliable.
¶ 48 After Apprendi, our Supreme Court continued to rely on Thorne's outdated analysis and held in Smith and Wheeler that the procedure allowing a judge to find the fact of a prior conviction under the POAA does not violate the right to jury trial.[23]Smith, 150 Wash.2d at 155, 75 P.3d 934; Wheeler, 145 Wash.2d at 121, 124, 34 P.3d 799. In Smith, the court quoted Thorne approvingly and adopted a preponderance of evidence standard for proof of a prior conviction. The Smith court reasoned that no additional safeguards are required because a certified copy of a judgment and sentence is highly reliable evidence. Smith, 150 Wash.2d at 143, 75 P.3d 934 (following Wheeler, 145 Wash.2d 116, 34 P.3d 799).
¶ 49 But after our Supreme Court issued Smith and Wheeler, the United States Supreme Court clarified the Sixth Amendment's jury trial right in Blakely and Cunningham. Cunningham v. California, ___ U.S. ___, 127 S.Ct. 856, 866, 166 L.Ed.2d 856 (2007); Blakely, 542 U.S. at 303, 124 S.Ct. 2531. These recent United States Supreme Court opinions invalidate the basis for the analysis in Thorne, Smith, Wheeler, and other Washington cases that rely on that precedent.
¶ 50 Under controlling Sixth Amendment analysis, a legislature's characterization of necessary factual findings as "sentencing factors" rather than "elements" is irrelevant. The Blakely Court outright rejected the interpretation of Apprendi that a "jury need only find whatever facts the legislature *439 chooses to label elements of the crime, and that those it labels sentencing factors  no matter how much they may increase the punishment  may be found by the judge." Blakely, 542 U.S. at 306, 124 S.Ct. 2531. The Court stated that this approach would lead to "absurd result[s]" and would undermine an essential jury function:
The jury could not function as circuit-breaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish.
Blakely, 542 U.S. at 306-07, 124 S.Ct. 2531.[24]
¶ 51 And most recently, in Cunningham, the United States Supreme Court again flatly rejected attempts to base the jury trial right on a sentencing code's structure, the historical discretion of courts in determining facts that underlie higher sentences, or the reliability of evidence to support increased penalties. Cunningham, 127 S.Ct. at 866. These discredited rationales are the sole bases on which Thorne relies. After Cunningham, it is clear that the defendant's right to a jury trial rests on a "bright-line rule" that is not subject to policy concerns such as whether a jury would add additional safeguards to the procedure, what the legislature intended, or whether the evidence that the fact-finder is to evaluate is particularly reliable. Cunningham, 127 S.Ct. at 868; see also Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 2552, 165 L.Ed.2d 466 (2006) (holding that there is no distinction in the right to jury trial between "sentencing factors" and "elements").
¶ 52 Apprendi and its progeny overruled the case law on which Thorne rests. Apprendi, 530 U.S. at 489-90, 120 S.Ct. 2348. The Thorne court summarized the then current law, saying, "[T]he United States Supreme Court has repeatedly held that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed even where the sentence turns on specific findings of fact." Thorne, 129 Wash.2d at 782, 921 P.2d 514. Apprendi overruled this interpretation of the Sixth Amendment and eroded Thorne. Likewise, because Smith and Wheeler are premised on Thorne and a pre-Blakely and pre-Cunningham understanding of the right to jury trial, they are no longer good precedent on this issue.
¶ 53 After Blakely, our Supreme Court reiterated, but qualified, the rulings of Smith and Wheeler. See Lavery, 154 Wash.2d at 256-57, 111 P.3d 837 (discussing Smith, 150 Wash.2d 135, 75 P.3d 934, and Wheeler, 145 Wash.2d 116, 34 P.3d 799). In Lavery,[25] the court first held that "[l]ife without possibility of parole is a penalty beyond the statutory maximum for the crime of second degree robbery," and held that Apprendi applied.[26]Lavery, 154 Wash.2d at 256, 111 P.3d 837. The court then reiterated its rulings in Smith and Wheeler. Lavery, 154 Wash.2d at 256-57, 111 P.3d 837. And it held that a jury must determine facts relating to comparability analysis when foreign crimes are not facially identical to Washington offenses. Lavery, 154 Wash.2d at 258, 111 P.3d 837. Thus, in Lavery, the court implicitly ruled that the right to jury trial applies to facts at POAA sentencing, while accepting that the "prior conviction" exception allows a judge to determine legal comparability in many situations.[27] *440 In doing so, the court rejected the notion that the POAA is exempt from the Sixth Amendment right to jury trial because it is a recidivist statute.
¶ 54 In my view, no viable Washington case clearly addresses the issue of a POAA defendant's right to a jury trial when the defendant contests that he is the person previously convicted of two "most serious offenses." Blakely and Apprendi are grounded in the United States Constitution's Sixth Amendment and establish a defendant's minimum jury trial right. Under the Sixth Amendment and controlling cases interpreting its application, I would hold that the "prior conviction" exception to the right to jury trial does not apply to the contested fact of identity when extrinsic evidence is required and the sentence to be imposed exceeds the maximum possible sentence a court could impose based on the jury's findings.
¶ 55 The United States Supreme Court has never directly ruled on whether, under a recidivist sentencing statute, a defendant contesting identity has a right to jury trial under the Apprendi/Blakely "prior conviction" exception.[28] But Washington law long ago held that recidivist sentencing schemes implicate two issues: (1) the fact of the prior conviction, e.g., whether the conviction was for rape, whether that rape was against a minor of 12 years or younger, etc.; and (2) whether the person to be sentenced is the person who was previously convicted. Thorne, 129 Wash.2d at 783, 921 P.2d 514; Furth, 5 Wash.2d at 10, 104 P.2d 925. The United States Supreme Court has also ruled that the issue of whether the person to be sentenced is the same person who was previously convicted, is separate from the facts underlying a conviction and accordingly held that a habitual offender statute granted the statutory right to a jury trial on the identity issue. See Graham, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917.
¶ 56 The question for us today is whether the fact of identity is exempt from the right to jury trial under the prior conviction exception when the defendant is to be sentenced as a persistent offender and placed in jeopardy of receiving a greater punishment (life without possibility of parole) than the statutory maximum possible for the class A offense for which he is to be sentenced (life with the possibility of parole). See Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 ("Other than the fact of a prior conviction.").
¶ 57 In Jones, the United States Supreme Court explained the jury trial exception: "[A] prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). And the Court in Blakely reasoned that the right to jury trial, including the prior conviction exception, "reflects [the] longstanding tenet[] of common-law criminal jurisprudence: that the `truth of every accusation' against a defendant `should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors.'" Blakely, 542 U.S. at 301, 124 S.Ct. 2531 (quoting 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)). This tenet applies to the prior conviction exception because a jury previously found the "truth of every accusation" supporting the prior conviction beyond a reasonable doubt.
¶ 58 Thus, a defendant has no right to jury trial and may not relitigate the fact that an offense was committed on a previous occasion (i.e., the fact of a prior conviction) because he or she already enjoyed the right and received its protections during the first trial.[29] A jury *441 finding on the facts underlying a prior conviction would merely duplicate the process that the defendant previously received. In short, the prior conviction exception appropriately prevents a criminal defendant from "double-dipping" on his jury trial rights. Jackson, 368 F.3d at 67-68 n. 9 (reasoning, in dicta, that the prior conviction exception should not extend to the fact of identity because "[t]he question in the new proceeding is . . . whether the defendant was the person convicted in the prior proceeding. [But t]he defendant has never received due process on that question, because the question has never before been adjudicated."); Benjamin J. Priester, Structuring Sentencing: Apprendi, the Offense of Conviction, and the Limited Role of Constitutional Law, 79 Ind. L.J. 863, 878 (2004); see Huigens, supra, at 408 (noting that identity may be a contestable fact).
¶ 59 But a defendant is not "double-dipping" on his right to jury trial when he asserts that the prior conviction was not issued against him and that, therefore, he is not eligible to be sentenced to life without possibility of parole. Addressing the case before us today, an Illinois jury found beyond a reasonable doubt that a man going by the names "John Williams" and "Clarence Rudolph" was guilty of home invasion. Those Illinois findings (e.g., that John Williams AKA Clarence Rudolph was the perpetrator, that the structure invaded was a home, etc.) fit squarely in Blakely's "prior conviction" exception. But no jury has found that the Illinois home invasion convict was the same man who currently appeals the increased penalty of his POAA sentence. And, regardless of the fact of his prior convictions, no jury had yet to find Rudolph to be a persistent offender. Instead, over Rudolph's protestation that he was not the man convicted in Illinois, a Washington judge examined evidence and found identity of the Illinois convict by a preponderance of the evidence. This judicial finding of identity increased Rudolph's maximum possible sentence from life with parole to life without possibility of parole. The "prior conviction" exception to the right to jury trial does not encompass the fact of identity in a POAA proceeding because the jeopardy to which the defendant is exposed exceeds the maximum possible life sentence on the jury's verdict finding him guilty of the charged offense. Accordingly, Rudolph was denied his Sixth Amendment jury trial right on the issue of his identity and I would reverse his POAA sentence.
¶ 60 It appears that the practice of placing the convicted person's fingerprints in the judgment and sentence has caused appellate courts to conflate two issues regarding recidivist sentencing proceedings: whether there was error and whether that error prejudiced the defendant. In most instances, judicial fact-finding of prior convictions is a reasonable procedure with no negative effect on the truth-seeking function of the sentencing process. Typically, any error in failing to convene a jury to decide the point would be harmless beyond a reasonable doubt. See Recuenco, 126 S.Ct. at 2553 (holding that a violation of the right to jury trial may constitute harmless error); accord State v. Suleiman, 158 Wash.2d 280, 294-95, 143 P.3d 795 (2006). But the likely frequency that such error is harmless does not mean there is no error in denying a defendant the right to jury trial for the contested fact of identity at a POAA sentencing proceeding where the resulting sentence will exceed that which could be properly imposed on the jury's verdict.
¶ 61 The majority's reliance on pre-Apprendi cases such as Thorne runs contrary to the United States Supreme Court's controlling authority. See, e.g., State v. Thiefault, 160 Wash.2d 409, 158 P.3d 580 (2007). Thorne posited that the right to a jury trial would not add any safeguards to the proceedings *442 because prior convictions are proven by certified copies of the judgment and sentence and identity can be proved by fingerprints, highly reliable evidence. Thorne, 129 Wash.2d at 783, 921 P.2d 514. This observation undoubtedly demonstrates that the failure to hold a jury trial on the issue of identity in most POAA cases is harmless beyond a reasonable doubt. See Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (holding that Blakely errors may be harmless). But it is no longer appropriate to hold categorically that the Sixth Amendment does not require a jury trial in a POAA sentencing proceeding. See Cunningham, ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856.
¶ 62 In my opinion, the majority's reliance on Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), is misplaced. In Shepard, the Court addressed the federal sentencing guidelines that it has described as advisory and has distinguished from Washington's SRA. Although I question the Supreme Court's rejection of the Washington legislature's determination that maximum felony terms depend on their classification, e.g., A, B, or C felonies, and not the SRA sentencing grid, the analysis announced in Blakely is nevertheless compelling, here, given the length and mandatory nature of POAA sentences. I note also that the highest court distinguished between federal sentencing guidelines, which they have held are advisory, and Washington's sentencing ranges under the SRA. See Rita v. United States, ___ U.S. ___, 127 S.Ct. 2456, 2467, 168 L.Ed.2d 203 (2007) ("Booker held unconstitutional that portion of the [federal] Guidelines that made [sentences] mandatory. . . . It also recognized that when district courts impose discretionary sentences . . . such a sentencing scheme will ordinarily raise no Sixth Amendment concern.") (discussing United States v. Booker, 543 U.S. 220, 233-34, 243-44, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)); see also James v. United States, ___ U.S. ___, 127 S.Ct. 1586, 1590, 1600 n. 8, 167 L.Ed.2d 532 (2007) (James admitted his prior conviction in his statement of defendant on plea of guilty and was sentenced to a mandatory 15-year term under the Armed Career Criminal Act, 18 U.S.C. § 924(e)). Thus, cases analyzing federal sentencing statutes, like Shepard, do not alter my view of the constitutional necessity of a jury trial before a repeat offender may be sentenced to life without the possibility of parole for any crime except aggravated first degree murder.
¶ 63 Neither am I convinced that the Washington Supreme Court's recent decision in State v. Jones, 159 Wash.2d 231, 149 P.3d 636 (2006), cert. denied sub. nom Thomas v. Washington, ___ U.S. ___, 127 S.Ct. 2066, 167 L.Ed.2d 790 (2007), sheds much light on the proper application of the Sixth Amendment jury trial right in POAA cases. In Jones, our Supreme Court ruled that whether a defendant was on community placement at the time he committed an offense was a factual issue that could be constitutionally decided by the trial court by a preponderance of the evidence. Jones, 159 Wash.2d at 243-47, 149 P.3d 636. Jones is factually distinguishable because the defendant in Jones did not face a sentence of life without possibility of parole, nor did he face a sentence greater than the statutory maximum possible under Washington law.[30] Moreover, I believe that the decision in Jones clearly controls only when the jury finds that the defendant committed the offense on a single date. Whether that date clearly falls within the time the sentencing judge determines the defendant was serving the community placement portion of his sentence on the prior crime is a mixed question of law and fact that the sentencing court can decide. But Jones does not address situations in which the crime charged is alleged to have been committed over a period of time and the jury does not find that the crime occurred on a particular discrete date.[31]
*443 ¶ 64 On the record in this case, I cannot find that the deprivation of Rudolph's right to have the jury determine whether he was the person convicted in Illinois was harmless beyond a reasonable doubt. The State failed to provide a certified copy of the judgment and sentence, none of the names of the Illinois paperwork was identical with Carlton Roosevelt Rudolph, fingerprint analysis was not subject to cross-examination, and, crucially, Rudolph disputed that he was the Illinois convict.[32]
¶ 65 To summarize, under controlling decisions of the United States Supreme Court, I believe the right to jury trial extends to those, like Rudolph, who face the permanent deprivation of their liberty by being sentenced to a term that exceeds the statutory maximum sentence possible for the crime the jury has found they committed. Under the SRA, when sentencing a defendant solely based on the jury's verdict to a term within the maximum possible, the State need only present a certified judgment and sentence showing the defendant's name, then the burden shifts to the defendant to declare under oath that he did not commit the prior offense. State v. Ammons, 105 Wash.2d 175, 189-90, 713 P.2d 719, 718 P.2d 796, cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). But because the POAA requires a sentence (life without possibility of parole) greater than that possible on the jury's first degree robbery verdict alone (life), this process was insufficient to protect Rudolph's Sixth Amendment constitutional jury trial right when he disputed that he was the person previously convicted in Illinois. Following what I believe to be controlling precedent of the United States Supreme Court, I would reverse Rudolph's POAA sentence.[33]
NOTES
[1] RCW 9.94A.570.
[2] Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).
[3] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[4] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[5] RCW 9A.52.020(1).
[6] The Florida judgment and sentences included Rudolph's guilty plea convictions for petit theft, three counts of aggravated battery, robbery, two counts of armed robbery, and one count of aggravated battery with a firearm.
[7] Following oral argument and after the Washington Supreme Court denied review of Ball, we requested additional briefing from the parties on the scope and application of Ball and the impact of Blakely, if any, on the requirements for proving identity in a POAA case. Order Requiring Additional Briefing.
[8] We note that another panel of this court recently addressed arguments substantially similar to Rudolph's arguments and also adhered to Ball. State v. Lewis, ___ Wash. ___, 166 P.3d 786 (2007).
[9] At the outset in Wheeler, our Supreme Court noted:

We must decide whether, in light of Apprendi [], prior convictions used to prove a defendant is a persistent offender must be charged in the information, submitted to a jury, and proved beyond a reasonable doubt. Unless and until the federal courts extend Apprendi to require such a result, we hold these additional protections are not required under the United States Constitution or by the [POAA] of the [SRA], chapter 9.94A RCW.
State v. Wheeler, 145 Wash.2d 116, 117, 121, 34 P.3d 799 (2001), cert. denied, 535 U.S. 996, 122 S.Ct. 1559, 152 L.Ed.2d 482 (2002).
[10] The Supreme Court held in Blakely that under Apprendi a jury must find any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the penalty the court can impose without making additional factual findings. 530 U.S. at 490, 120 S.Ct. 2348. Even under Blakely, prior convictions could still be proved to a judge by a preponderance of the evidence because of their inherent reliability.

As the dissent notes, this prior-conviction exception originated with the United States Supreme Court's decision in Almendarez-Torres, in which the Court recognized that a defendant's recidivism "is a traditional, if not the most traditional, basis for a sentencing court" to increase the offender's current sentence. 523 U.S. at 243, 118 S.Ct. 1219.
[11] Such documentation is frequently derived in part from, for example, a previous jury's verdict or the defendant's guilty plea to a prior crime, which provide the necessary factual basis to support the fact of a prior conviction.
[12] More specifically, the Lavery Court held:

Where the foreign statute is broader than Washington's, [an examination of the record to determine factual comparability] may not be possible because there may have been no incentive for the accused to have attempted to prove that he did not commit the narrower offense. See, e.g., State v. Ortega, 120 Wash. App. 165, 84 P.3d 935 (2004).
. . . .
Any attempt to examine the underlying facts of a foreign conviction, facts that were neither admitted or stipulated to, nor proved to the finder of fact beyond a reasonable doubt in the foreign conviction, proves problematic. Where the statutory elements of a foreign conviction are broader than those under a similar Washington statute, the foreign conviction cannot truly be said to be comparable.
As in Ortega Lavery had no motivation in the earlier conviction to pursue defenses that would have been available to him under Washington's robbery statute but were unavailable in the federal prosecution.
Lavery, 154 Wash.2d at 257-58, 111 P.3d 837.
[13] In this footnote, we noted:

We considered [Lavery] in reaching our decision. Lavery is inapplicable to this case because Ball's prior convictions were from the state of Washington and not foreign convictions. Further, the court did not have to make any factual findings regarding the prior convictions. . . .
Ball, 127 Wash.App. at 957 n. 1, 113 P.3d 520.
[14] State v. Jones, 159 Wash.2d 231, 241, 149 P.3d 636 (2006).
[15] The Jones Court addressed and concluded that under the prior-conviction exception, the sentencing court could determine, as a "matter of law," whether a defendant was on community custody at the time he committed the current offense because this fact was closely related to and flowed directly from the fact of the prior conviction. Jones, 159 Wash.2d at 239 n. 7, 241, 149 P.3d 636.

In so holding, the Jones Court rejected the argument that the sentencing court could not decide a defendant's community custody status as a matter of law because this issue might require the sentencing court to "consider factors beyond the existence of the prior conviction and that because such considerations could be complex or even challenged, `[t]he procedural safeguards necessary to the prior conviction exception are not present' in the community placement determination." Jones, 159 Wash.2d at 244, 149 P.3d 636 (quoting Resp'ts' Answer to Pet. for Review at 10).
[16] For example, in Shepard, 544 U.S. at 13, 125 S.Ct. 1254, the United States Supreme Court limited the scope of judicial fact finding under a federal sentencing scheme that increased penalties based on the existence of certain types of prior offenses. In so doing, however, the Court neither addressed nor held that a jury must find the identity of a person convicted of a prior offense.
[23] The Washington Constitution is not more protective than is the federal constitution in the arena of POAA sentencing. Smith, 150 Wash.2d at 156, 75 P.3d 934.
[24] Our Supreme Court neither cited nor addressed this Blakely holding when it recently held that the State need not notify a defendant that he faces a POAA sentence and reasoned that (1) the POAA is a sentencing statute, not a statute defining the elements of the crime; (2) the legislature alone fixes sentencing procedures; (3) the legislature does not explicitly require pretrial notice of POAA sentences; and (4) therefore, notice is not required. Crawford, 159 Wash.2d at 93-95, 147 P.3d 1288. This rationale contradicts Blakely and Cunningham.
[25] Inexplicably, the Lavery court did not discuss, nor even cite to, Blakely.
[26] Lavery's second degree robbery conviction (without a jury finding of aggravating factors) subjected him to a maximum penalty of 84 months under the SRA. Lavery, 154 Wash.2d at 254, 111 P.3d 837.
[27] One month after our Supreme Court published Lavery, this court issued State v. Ball, 127 Wash.App. 956, 113 P.3d 520 (2005), review denied, 156 Wash.2d 1018, 132 P.3d 734 (2006). Ball focused on the necessity of separately proving Washington State convictions of which the trial court had authority to take judicial notice. It did not expressly address Lavery's holding that a sentence of life without possibility of parole exceeds that which may be imposed on the jury's verdict alone. Lavery, 154 Wash.2d at 256, 111 P.3d 837.
[28] See Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) (addressing statute of limitations under habitual offender statute; neither jury trial nor identity issues were raised); Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (ruling on the admissibility of evidence for predicate offenses under federal habitual offender law; issue of right to jury trial, section III, garnered only four out of eight votes); Almendarez-Torres, 523 U.S. at 243-44, 118 S.Ct. 1219 (refraining from ruling on issue of identity because the defendant admitted that he had committed prior felonies).
[29] The other possible rationale is that sentencing under recidivist statutes is exempt totally from the right to jury trial. See Almendarez- 523 U.S. at 243, 118 S.Ct. 1219 (reasoning that recidivism is a "traditional . . . basis for a sentencing court's increasing an offender's sentence"). But our Supreme Court implicitly rejected this rationale in Lavery by applying Apprendi to the POAA. And, although Crawford adhered to the recidivist rationale, our Supreme Court did not analyze or distinguish its contrary analysis in Lavery. Further, Cunningham casts doubt on this explanation by criticizing strongly the theory that the right to jury trial hinges on the legislature's characterization of a law as fitting within a particular category or on the tradition of judicial fact-finding in particular arenas. Cunningham, ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856.
[30] See RCW 9A.20.020(1)(a), (b) and (c) (The statutory maximum for a class A felony is at least 20 years; the statutory maximum for a class B felony is not more than 10 years; and the statutory maximum for a class C felony is not more than 5 years.).
[31] For example, if the crime is alleged to have been committed between September 30 and January 12 and the court determines that the defendant was serving the community placement portion of his sentence until December 31, a portion of the charging period falls within the community placement portion of the prior sentence and a portion of the charging period falls outside. In this situation, no jury has found the date on which the defendant committed the offense beyond a reasonable doubt. And I question the trial court's authority to do so in its absence.
[32] Rudolph did not dispute that he was the Florida convict.
[33] The proper remedy, beyond reversal, is not clear. RCW 9.94A.537, the so-called "Blakely fix," allows trial courts to empanel juries to determine aggravating circumstances after an appellate court reverses due to a Blakely error. But it is not clear whether a POAA sentence is an "aggravating circumstance," and the parties did not brief the issue. If RCW 9.94A.537 applies and allows rehearing of Rudolph's POAA sentence with a jury, then the statute's other provisions apply. In particular, all defendants would be entitled to pre-trial notice if they face a POAA sentence. But in a different context, our Supreme Court held that pre-trial notice of a POAA sentence is not required. See Crawford, 159 Wash.2d 86, 147 P.3d 1288. As this issue was not briefed, we leave it for another day.